747 P.2d 752

**L.D. FITZGERALD, Trustee in Bankruptcy, and Paul Spanbauer, Plaintiffs–Appellants,**

v.

**Lloyd J. WALKER, individually and as Trustee-in-Trust for Lloyd J. Walker, P.A., Defendant–Respondent.**

**No. 16607.**

Supreme Court of Idaho.

Dec. 9, 1987.

Lojek & Hall, Ctd., Donald W. Lojek (argued), Boise, for plaintiffs-appellants.

Clemons, Cosho & Humphrey, Sara M. Thorpe (argued), Boise, for defendant-respondent.

DONALDSON, Justice.*

This is a legal malpractice case in which the plaintiffs' sole expert witness on the question of breach informed them on the first day of trial, while the jury was being selected, that he could not testify on their behalf. The district court thereupon dismissed with prejudice plaintiffs' case, and later refused to grant relief from the judgment pursuant to I.R.C.P. 60(b). Plaintiffs now appeal, arguing that the court below abused its discretion.

I.

The facts of this case begin in January 1979, when Country Pride sued predecessors of the plaintiffs in the case at bar for money due on an open account. Those plaintiffs, with Lloyd J. Walker as their attorney, counterclaimed alleging antitrust

* DONALDSON, J., sat and participated fully in    the decision and opinion prior to his death.

violations. Country Pride's claim was eventually resolved, but the counterclaim remained. Later, however, the entire case was dismissed because Walker had not answered certain interrogatories. On October 21, 1983, the plaintiffs herein, with Donald W. Lojek as their attorney, filed this suit against Walker alleging legal malpractice. The defendant here, Walker, argues that the interrogatories in the *Country Pride* action were not answered because he was unable to do so without locating and reviewing documents in Arkansas, a task which the plaintiffs allegedly could not afford. Plaintiffs here also contend Walker represented that an appeal had been filed by him in the *Country Pride* suit, and that this in fact was never done. Walker, on the other hand, asserts that for various reasons it was mutually decided that an appeal would not be worth pursuing.

On July 18, 1985, District Judge Schroeder issued an order entitled "Notice of Jury Trial Setting and Order Governing Further Proceedings (Review Carefully)." This order set the trial date and established deadlines for discovery. In answering an interrogatory, plaintiffs had in May 1986 indicated that their expert witness would be a Mr. Green of Oregon. About three weeks before trial, however, plaintiffs informed defense counsel that Mr. Green would be unavailable and that in his place a Boise attorney would testify as plaintiffs' expert. When the day for trial arrived, and while the jury was being selected, plaintiffs' expert passed a message to Donald Lojek stating he would be unable to testify. Since this person was Lojek's only expert witness, Lojek moved for a continuance so that another expert could be found. In the alternative, Lojek asked for a recess, and if that were not granted he sought leave to proceed with his case. The district judge denied these requests and dismissed plaintiffs' case with prejudice.[1] Plaintiffs filed a motion for relief from the dismissal order which was denied. *See* I.R.C.P. 60(b).

On appeal, plaintiffs argue that they should have been granted relief from the judgment because their witness's decision not to testify was a "surprise." Walker argues that it was not the result of surprise, but a lack of diligence on Lojek's

---

1. The trial court's "Order of Dismissal with Prejudice" provided:

"Trial of this case commenced on July 16, 1986. During voir dire examination of the jury the Court was advised that the Plaintiffs did not have an expert to testify regarding the claimed attorney malpractice in this case. The court finds as follows:

"1. All parties had informed this Court that they were ready to proceed with trial as scheduled.

"2. The Court was ready to proceed with trial. Jury selection had in fact commenced.

"3. The trial date had been set for almost a year.

"4. The Court recognizes the emotional strain involved in preparing for trial and the impact on the parties and witnesses involved.

"5. The Court recognizes that when one party is given the chance to have its matter tried other litigants do not have the benefit of the Court's time.

"6. It would be unfair to postpone the trial because there are other proceedings set to commence on Monday, July 21, 1986, involving persons in custody and a trial involving the death of seven persons and numerous out of state witnesses set to begin July 22, 1986, backed up by a dental malpractice case involving out of state witnesses.

"7. There has been no excuse or compelling circumstance why the matter could not be tried now, such as any sickness, accident or unavoidable difficulty that would make it unjust to dispose of the case at this time.

"8. On July 18, 1985, this Court filed and served on the parties a Notice of Jury Trial and Order Governing Further Proceedings to control the course of trial preparation. The Court has not been advised of any good cause or compelling reason why this Order should not be enforced and complied with.

"9. Any continuation of this case would mean discovery would be reopened when the time for discovery has clearly passed, and would mean that there would possibly be new witnesses, depositions and rebuttal evidence and new issues brought up.

"10. Plaintiffs have made a judicial admission that they do not have a prima facie case at this time against Defendant since they have no expert opinion that the Defendant's conduct fell below the standard of practice or that the Defendant's conduct caused any damage.

"Based on the above findings, and the matters discussed in open court, and in the interest of justice IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Plaintiffs' action against the Defendant is dismissed with prejudice. Costs to the defendants."

part in preparing his expert witness. Walker cites the affidavit of plaintiffs' Boise expert, which states that the affiant did not receive the materials needed to review the allegations of malpractice until the day before trial, and that on the day of trial he received a message from Lojek requesting that he notify Lojek if he would not be able to testify that Walker's conduct fell below the standard of care for attorneys.

## II.

The issue which this Court must address is whether the trial court abused its discretion, or made an error of law, in dismissing plaintiffs' case with prejudice for their failure to have an expert witness ready to testify as to breach on the first day of trial in a legal malpractice action. The issue presented illuminates the natural tension between providing aggrieved individuals meaningful access to the courts and ensuring the effective administration of justice and speedy resolution of disputes.

## III.

A familiar criticism of the courts has been their propensity to dispense justice slowly, especially in civil cases. Courts in general, and this Court in particular, have been sensitive to this concern. In the past years, the Idaho court system has implemented a computerized case tracking system for its trial and appellate courts. We have adopted time guidelines for the courts in order to ensure that cases are not unnecessarily delayed or neglected. Also, procedural rules, such as I.R.C.P. 16, have been adopted to encourage pretrial conferences, and narrowing of issues prior to trial.

In addition, there are a variety of tools available to a trial court faced with a party or attorney who has disobeyed court orders or delayed unnecessarily. First, courts have always had inherent powers to deal with such abuses:

"A trial court has the inherent power to dismiss a case for want of prosecution. (*People v. Jefferds,* 126 Cal. 296, 58 Pac. 704.) It may do so of its own motion, if the plaintiff fails or refuses to prosecute

his suit with reasonable diligence. Where it appears that a plaintiff is not attempting in good faith to press his action, and especially as here, where he fails to appear on the date set for trial, after several continuances, the court has the undoubted right, without notice to such party, and even without motion by the defendant, to dismiss the action for want of prosecution."

*McAllister v. Erickson,* 45 Idaho 211, 215, 261 P. 242, 243 (1927). *Accord Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962).

Second, the rules of civil procedure provide remedies. A court may impose sanctions where pleadings or motions have been interposed for delay or other improper purposes, I.R.C.P. 11(a)(1) (Supp.1986), and sanctions for violations of discovery orders are provided for in I.R.C.P. 37(e). Violations of scheduling or pretrial orders are also subject to sanctions. I.R.C.P. 16(a). Finally, a failure to prosecute or a failure to comply with an order of the court or the rules of civil procedure may warrant dismissal under I.R.C.P. 41(b).

These discretionary tools exist for the use of trial courts, but they must be used judiciously and for proper purposes. As has been said, the goal is not expediency for its own sake:

"Courts exist to serve the parties, and not to serve themselves, or to present a record with respect to dispatch of business. Complaints heard as to the law's delays arise because the delay has injured litigants, not the courts. For the court to consider expedition for its own sake 'regardless' of the litigants is to emphasize secondary considerations over primary."

*Alamance Industries, Inc. v. Filene's,* 291 F.2d 142, 146 (1st Cir.1961) (footnote omitted), *cert. denied* 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961).

Also, though "burgeoning filings and crowded calendars have shorn courts of the luxury of tolerating procrastination," *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 668 (2nd Cir.1980), the "landable objec-

tive [of reducing the congestion in court dockets] should not be sought in a way which undercuts the very purposes for which courts were created—that is, to try cases on their merits and render judgments in accordance with the substantial rights of the parties." *Link, supra*, 82 S.Ct. at 1398 (Black, J., dissenting).

Lastly, where a dismissal with prejudice is contemplated, a court must exercise caution and make appropriate findings:

> "Dismissals with prejudice are 'reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors.' *Rogers v. Kroger*, 669 F.2d [317] at 320 [ (5th Cir.1982) ]. *Jones v. Caddo Parish School Bd.*, 704 F.2d 206 (5th Cir.1983). Those aggravating factors include (1) delay resulting from intentional conduct, (2) delay caused by the plaintiff personally, and (3) delay causing prejudice to the defendant. *Morris v. Ocean Systems, Inc.*, 730 F.2d 248 (5th Cir.1984).

> "In addition to the foregoing, the court must consider lesser sanctions. That consideration, and the court's findings that lesser sanctions would be inadequate, must be spread upon the record for 'such findings of fact are essential for our consideration of the inevitable argument that the dismissal was an abuse of its discretion.' *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir.1984). In *Rogers*, 669 F.2d at 321–22 we noted several such lesser sanctions which might be considered: 'Assessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket.' "

*Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir.1985) (reviewing dismissal pursuant to Fed.R.Civ.P. 41(b)).

## IV.

In the case at bar, the trial court had issued an order long before trial which had provided that the parties were to exchange expert and nonexpert witness lists at least fourteen days prior to trial. The order similarly set time guidelines for other forms of discovery, and it specifically provided that a failure to comply with its provisions would result in any number of sanctions, including dismissal against the noncomplying party. It must have come as some surprise to the trial judge when, on the first day of a scheduled three-day trial, plaintiffs' counsel informed him that the plaintiffs did not have an expert witness to testify as to liability in their legal malpractice action. Plaintiffs' counsel moved for a continuance, or in the alternative, for the right to proceed with jury selection and the trial. Defense counsel moved for dismissal arguing that plaintiffs, without an expert witness as to liability, did not have a prima facie case.

The trial court struggled with this situation, and noted that a continuance was not a viable option. The court calendar was apparently full, and it would not have been possible to move the case back a day. Also, in response to plaintiffs' counsel's suggestion that he could find a replacement expert, the trial court expressed serious reservations about reopening discovery at such a late hour. The court thereupon dismissed the case with prejudice, reasoning as follows:

> "We are not, as I've indicated, talking about sickness, accident, unavoidable difficulty that would make it unjust to deny a continuance. At this point, to set the case over would mean, basically, reopening discovery. The time for concluding discovery has passed. There are strong reasons for requiring discovery within those time limits. At this point we would be talking about discovery of new witnesses. We would be talking about the right of the Defendant to depose that witness and to find, again, a witness or witnesses to respond to anything peculiar that that witness might have to say, that might be unforeseen at this point.

734

"It is untimely to reopen discovery and would threaten to open issues that may not have been addressed to this point. At this state of the proceedings, there is a general admission that there is not a prima facie case against the Defendant; that there is no expert opinion available that his conduct fell below the standards of practice or caused damage. I simply feel compelled, at this point, to dismiss the action and to conclude the case."

■ We begin our analysis of the trial court's actions by upholding his denial of plaintiffs' motion for a continuance and his refusal to reopen discovery on the first day of trial. Plaintiffs' counsel has argued that the situation here is similar to those cases where a witness cannot testify because of illness or death; and that because of the element of surprise, the trial court's refusal to grant a continuance was unjust and an abuse of discretion. This position is untenable. The situation in the case at bar was precipitated by plaintiffs' counsel's lack of diligence in securing expert opinions on liability, and not by mere fortuity. The cases dealing with sick or deceased witnesses are thus distinguishable.

■ The more troubling aspect of the trial court's actions is its dismissal with prejudice. Plaintiffs' counsel had indicated his desire to proceed with the trial even if a continuance were not granted. The defense counsel argued, and the trial court apparently agreed, that plaintiffs could not make out a prima facie case and that, therefore, dismissal was in order. The court's dismissal cannot be characterized as a summary judgment pursuant to I.R.C.P. 56(c) because the requisite notice was not given. The arguments of counsel and the comments of the trial judge all indicate that the case was dismissed because plaintiffs apparently could not make out a prima facie case. Thus, the dismissal must be considered a directed verdict pursuant to I.R.C.P. 50(a). Under that rule, however, a directed verdict would have only been proper *after* plaintiffs had presented their case-in-chief. The court's premature order of dismissal was error. The proper course would have been to allow plaintiffs to con-

tinue with their case at their peril, and, if they failed to make a prima facie showing, to grant defendant a directed verdict and consider an award of costs or even attorney fees against plaintiffs and/or their attorney.

## V.

The order of the trial court dismissing plaintiffs' case with prejudice is reversed and the cause remanded for further proceedings. The trial court is not precluded from considering the imposition of sanctions against plaintiffs or counsel for violations, if any, of its scheduling and discovery orders. *See* I.R.C.P. 16(a); and I.R.C.P. 37(e).

No costs or attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., and WALTERS, J., Pro Tem., concur.

SHEPARD, Chief Justice, concurring and dissenting.

I agree with and concur in that portion of the majority opinion which affirms the order of the trial court denying plaintiffs' motion for continuance.

It is a well-established principle that a motion for continuance is addressed to the trial judge's sound discretion. *Krepcik v. Tippett,* 109 Idaho 696, 710 P.2d 606 (Ct. App.1985). Therein the Court of Appeals further held that the exercise of such discretion will not be disturbed on appeal unless it was so arbitrary that it deprived a litigant of a fundamentally fair trial. It was further noted in that case that the trial court articulated his reasons for denying the continuance and that the facts in the record amply supported the judge's denial of the continuance. In the instant case the judge, as pointed out in the majority opinion, amply articulated his reasons for denial of the continuance. The facts in the record sustain the judge's denial of the continuance, and his reasons therefore.

I disagree with and dissent from that portion of the majority opinion which holds that the trial court erred in its dismissal of plaintiff's case with prejudice. In my view the trial court was correct in dismissing the

action on the basis of his well-articulated reasons. I disagree with the majority that it was only the argument of the defense counsel that persuaded the trial court that plaintiff's could not make out a *prima facie* case. On the contrary, the trial court's reasons are set forth in the majority opinion, and indicate that it was the plaintiff who made the judicial admission that he could not go forward with his case without the testimony of an expert witness. The record demonstrates that the assertion of the trial court is correct.

It is my view that the majority opinion incorrectly characterizes the trial judge's action as a directed verdict, and hence improper, since such can only be done at the conclusion of plaintiff's case. After the motion for continuance was denied, plaintiff's counsel admitted on the record that he had no *prima facie* case to present, and could not prosecute the action.

The genesis of this action dates back to January of 1979, and the actions which defendant allegedly failed to take in his representation of his then clients, the Atkinsons and the Spanbauers. The Atkinsons subsequently became insolvent and their interest in the present action is represented by the trustee in bankruptcy. The present action against the defendant alleging professional malpractice was filed in October, 1983.

In July, 1985, the district court ordered a jury trial to commence July 16, 1986. A pretrial schedule ordered all pretrial motions and discovery to be completed 42 days before the trial, and each attorney was to certify an exchange of information including their expert and non-expert witnesses. On June 16, 1986, plaintiffs, in answer to interrogatories, indicated that their expert witness, a lawyer from Portland, Oregon, would testify that defendant had been guilty of professional malpractice. On June 27, 1986, plaintiffs advised defendant that the Oregon lawyer would not so testify, but rather their expert witness testifying as to defendant's malpractice would be Ellis, a Boise lawyer.

The record contains no information from the Portland, Oregon attorney substantiating plaintiffs' claim that the Portland attorney had agreed to appear and testify as an expert witness concerning defendant's alleged malpractice. However, the record does contain an affidavit from the Boise attorney Ellis. Therein Ellis states that he had been contacted by plaintiffs to render an expert opinion regarding defendant's alleged malpractice. His affidavit, however, differs considerably from the assertions of the plaintiffs. Ellis states that while plaintiffs indeed sought his opinion as to defendant's alleged malpractice, he had declined to do so unless, and until he received sufficient documentation upon which to base an opinion. Ellis states that plaintiffs' counsel did not furnish such documentation until the evening before trial, July 15, 1986. The following morning during the course of the trial proceedings Ellis delivered a message to plaintiffs' counsel that he was unable to testify as desired by plaintiffs.

In the meantime, on July 2, 1986, defendant had filed a certificate of compliance with the pretrial order of the court listing witnesses, both expert and non-expert, and exhibits to be used at trial. No similar certificate was ever filed by plaintiffs.

It is clear to me at least, that an integral and necessary part of a plaintiff's burden of proof in a professional malpractice case is an opinion by a qualified expert witness that the defendant's conduct fell below the standard of care to be reasonably expected of such professional, and thus constituted malpractice. *McKee Electric Company, Inc. v. Carson Oil Company*, 301 Or. 339, 723 P.2d 288 (1986); *York v. Stiefel*, 109 Ill.App.3d 342, 64 Ill.Dec. 888, 440 N.E.2d 440 (1982); *Wright v. Williams*, 47 Cal. App.3d 802, 121 Cal.Rptr. 194 (1975). It was equally clear to the trial judge and to plaintiffs' and defendant's counsel, that plaintiffs had no such expert testimony at the time of trial. The trial judge was faced with a dilemma, no part of which could be attributed to the court or to defense counsel. The dilemma resulted solely from the failure of plaintiffs' counsel to comply with numerous portions of the pretrial order, and his failure to adequately prepare plaintiffs' case.

**736**

The trial court could have granted a continuance, which he refused to do, and his refusal is upheld and affirmed by the majority opinion. The trial court could have permitted plaintiffs to put on evidence which would not have satisfied the requirements of a *prima facie* case. Thereafter, as noted by the trial court, he would have had no alternative but to grant a directed verdict to the defendant, and also award costs and attorney fees to defendant. *See* I.R.C.P. 50(a). As noted by the trial court, plaintiffs were insolvent, and hence there was little if any prospect of defendant recovering any such costs or attorney fees. If as plaintiffs now assert, the trial court should have permitted them *while trial was proceeding* to solicit and obtain still a third expert witness to testify as desired by plaintiffs, the right of the defendant to depose or otherwise examine such witness would have been abrogated. Defendant would be denied the right to properly and adequately prepare his case.

In *Jensen v. Doherty,* 101 Idaho 910, 623 P.2d 1287 (1981), the Court held that the granting of an involuntary dismissal lies within the sound discretion of the trial court, and that imposition of the sanction will stand absent abuse of that discretion. The Court stated: "It is a necessary final recourse available to the Court to protect its processes and other litigants from abuse. It is a remedy to be sparingly used, but it is always available." I would hold that there is no such abuse of discretion upon the record in the instant case. The trial court amply set forth his reasons for his order, and those reasons are supported in the record. As stated in *Viehwig v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982): "A well-founded public outcry over delay in the administration of justice now requires that judges at all levels play an active role in managing their calendars." The record discloses that the trial court was doing precisely that.

While there is much to be said regarding the desirability of adjudicating a case on its merits, such should not be the result if it deprives the adverse party of substantial rights, or deprives other litigants of the

right to present their cases in a timely fashion. This case was not determined below on its merits solely because of the action or non-action of plaintiffs. It is perhaps the height of irony that the case in which counsel failed to prepare and failed to follow the orders of the trial court is one in which plaintiff was alleging the professional malpractice of his former legal counsel.

I would affirm the orders of the trial court dismissing the complaint with prejudice, and would grant costs and attorney fees on appeal to the defendant.