771 P.2d 550

**James D. FERRIER, Petitioner–Appellant,**

v.

**STATE of Idaho, Defendant–Respondent.**

**No. 17777.**

Court of Appeals of Idaho.

April 3, 1989.

---

Jay P. Gaskill, Randall, Blake, Cox, Risley & Trout, Lewiston, for petitioner-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for defendant-respondent.

PER CURIAM.

James Ferrier appeals from an order of the district court denying him relief on his application under the post-conviction procedure act, I.C. § 19–4901 et seq. In his application, Ferrier sought a reduction of an indeterminate, ten-year sentence imposed for lewd conduct with a minor. We affirm.

The case comes to us with the following background. On January 31, 1985, based upon Ferrier's plea of guilty, a judgment of conviction was entered and Ferrier received the ten-year sentence. Ferrier appealed from the judgment and, while that appeal was pending, he filed a motion with the district court under I.C.R. 35 for a reduction of the sentence. That motion, and a later motion to reconsider, were denied. Ferrier thereafter voluntarily dismissed his appeal in July, 1985. Nearly two years later, Ferrier filed his application for post-conviction relief. The petition alleged several grounds in support of his claim for relief. However, at an evidentiary hearing held on the petition, Ferrier presented evidence only on one allegation—his contention that his sentence was excessive and should be reduced. The other grounds alleged in his petition either were abandoned, were admitted to be incorrect or were conceded to be without merit.[1]

After hearing the evidence submitted on the excessive sentence question, the district court reached two conclusions. First, the court determined that reduction of a sentence is not a form of relief available under the post-conviction procedure act. Second, the court determined in the interest of "judicial economy" that even if the court had authority in this proceeding to entertain Ferrier's request to reduce his sentence, the evidence did not establish that the sentencing judge[2] had abused his discretion.

On appeal, Ferrier continues to assert that his sentence is excessive and was an abuse of sentencing discretion. He argues that he is entitled to relief from his sentence, under two provisions of the post-conviction procedure act, I.C. § 19–4901(a)(4) and (6). Those provisions recite:

(a) Any person who has been convicted of, or sentenced for, a crime and who claims:

.   .   .   .   .

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

.   .   .   .   .

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy: may institute, without paying a filing fee, a proceeding under this act to secure relief.

After reviewing the record, we conclude that Ferrier has not demonstrated an entitlement to relief under either of those provisions. In *Ramirez v. State*, 113 Idaho 87, 741 P.2d 374 (Ct.App.1987), we upheld

---

1. Ferrier's other allegations included assertions that his conviction had been based upon a confession obtained in violation of his constitutional rights and that he had been denied effective assistance of counsel in several respects. In denying relief under Ferrier's application, the court specifically found that Ferrier had presented no evidence with regard to these allegations.

2. The district judge who imposed Ferrier's sentence was no longer in office when the post-conviction application was filed; hence, the petition was considered by another judge in the district.

the denial of relief by a district court upon a petition under the post-conviction procedure act, where the applicant alleged that his sentences were excessive. We explained:

> Post-conviction relief obviously is not a proper avenue for challenging a judge's exercise of discretion, as opposed to his lawful authority, in sentencing. *See,* I.C. § 19–4901. Excessiveness does not equate to illegality unless an Eighth Amendment ("cruel and unusual punishment") issue is raised. There is no such allegation here. A motion to reduce an allegedly excessive, albeit lawful, sentence may be made under Rule 35, I.C.R., within 120 days after the sentence is imposed. In this case, Ramirez timely filed, *pro se,* a "Petition Seeking Justice and Reconsider [sic] ... Resentencing." The trial judge treated the petition as a Rule 35 motion for reduction of sentence and he denied it. Ramirez failed to appeal. The post-conviction relief applications he filed nearly five years later do not now afford us any occasion to reexamine the Rule 35 question. *Compare*

*Almada v. State,* 108 Idaho 221, 697 P.2d 1235 (Ct.App.1985).

113 Idaho at 88–89, 741 P.2d at 375–76.

Here, Ferrier's petition did not frame any Eighth Amendment issue nor was there any evidence submitted at the hearing on Ferrier's petition from which it could be found that his sentence violated that constitutional provision. Nor has Ferrier identified any defect in the procedure when he was sentenced which would afford him relief in a post-conviction proceeding. Finally, it does not appear that Ferrier presented new material facts at his evidentiary hearing that require his sentence to be vacated in the interest of justice.

The order of the district court, denying relief under Ferrier's post-conviction application, is affirmed.

771 P.2d 907

**Richard W. LYLE,
Plaintiff–Respondent,**

and

**Robert William Akers, Plaintiff,**

v.

**Demetrius J. KOUBOURLIS and Toni
J. Koubourlis, Defendants–Appellants.**

Nos. 16167, 16308.

Supreme Court of Idaho.

March 21, 1988.

On Rehearing April 14, 1989.

Schwam & Schwam, Moscow, for defendants-appellants. Andrew M. Schwam (argued).

Keeton, Tait & Petrie, and Smith & Cannon, Lewiston, and Giattina & Winberry, Sacramento, Cal., for plaintiff-respondent. Messrs. Paul C. Keeton, Jerry V. Smith, and Lanny T. Winberry (argued).

BISTLINE, Justice.

## I. AKERS v. KOUBOURLIS

Appellants, Demetrius J. Koubourlis and Toni J. Koubourlis (Koubourlis), appeal the district court's holding that an enforceable settlement agreement existed between Robert William Akers (Akers) and Koubourlis and that no actionable fraud existed in the contract between Richard W. Lyle (Lyle) and the Koubourlises.

During the months of January and February of 1983, Koubourlis entered into negotiations with Akers over the purchase of a property known as Moscow Mall. Also in February of 1983, Koubourlis discussed the possible purchase of the Akers Department Store, Inc., a business in the Moscow Mall, from Akers and Lyle. Akers Department Store was a corporation owned largely by Akers with Lyle holding a small interest in the stock and acting as store manager. During these discussions, statements were made by both Lyle and Akers concerning the condition, performance, and profitability of the store. Documentary evidence was produced and given to Koubourlis showing that the store had made a profit in November and December of 1982. In fact, the store was losing money at a rate of about $15,000 per month. After reviewing the books and the records of the store, Koubourlis agreed to buy Akers' shares of stock in the store for the sum of $305,000. The purchase was to be evidenced by a note payable over the period February 1983 to March 15, 1994.

Koubourlis offered to purchase Lyle's shares for the sum of $19,000. This sum was due and payable upon the completion of the transfer of the stock. In April of 1983, a sales agreement and escrow instructions were executed with Koubourlis taking possession of the store. In an effort to reduce costs, the parties agreed to change escrow companies; these new escrow instructions were not completed.

After discovering the true financial position of the store, Koubourlis refused to continue payment on the note to Akers and Lyle.

Following the default by Koubourlis, Akers and Lyle filed suit to recover the purchase price of the stock. Akers additionally sought recovery on another note, the Sound West note, executed by Koubourlis which had been assigned to Akers. Lyle also sought to recover wages for his time spent as manager of the store. Koubourlis filed a counterclaim for damages in which he alleged the tort action of fraud and deceit charging that Akers and Lyle were guilty of material misrepresentations in connection with the sale of the Akers Department Store stock.

On May 25, 1984, at the conclusion of a deposition of Koubourlis, the parties entered into settlement discussions. These discussions are alleged by Akers to have resulted in an oral settlement agreement resolving their disputes as pleaded. A letter dated May 29, 1984, was drafted by Akers' attorney setting forth the terms of the settlement agreement. These terms were confirmed in a phone conversation between the attorneys for Akers and Koubourlis. A second letter dated June 8, 1984, confirmed this phone conversation and the agreement of terms. The letter also detailed a $50,000 partial payment to be made under the settlement by Koubourlis.

No objection to the content of these "confirmatory" letters was made by Koubourlis or his attorney prior to Koubourlis making the $50,000 payment by check, to Akers. On the check was the notation "towards settlement of Akers Dept. Store, Sound West and Moscow Mall." Koubourlis contends that the check was merely a good faith demonstration in negotiations towards a settlement.

On January 8, 1985, Akers moved for a summary judgment enforcing the settlement agreement. The motion was denied on the grounds that there existed triable issues of fact, and such a trial was held on May 23 and 24, 1985. On June 26, 1985, the trial court issued its memorandum opinion ruling that the parties had entered into

a valid and enforceable settlement agreement resolving the disputes between Akers and Koubourlis. The court entered a judgment for a sum in excess of $300,000 against Koubourlis.

The issues raised on appeal are: (1) did the district court err in finding that Akers and Koubourlis entered into an enforceable settlement agreement; and, (2) did the district court abuse its discretion by imposing a sanction denying a jury trial?

The standard of review for alleged trial court error is that the trial court's findings of fact will not be overturned unless the findings are clearly erroneous or not supported by substantial and competent evidence. I.R.C.P. 52(a). *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979); *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982). Due regard must also be given the opportunity of the trial court to determine the credibility of the witnesses and weigh conflicting testimony. *Roemer v. Green Pastures Farms, Inc.,* 97 Idaho 591, 548 P.2d 857 (1976); *Javernick v. Smith,* 101 Idaho 104, 609 P.2d 171 (1980).

The district court's amended Finding No. VII reads in pertinent part:

After weighing the conflicting testimony on this point, I find by a preponderance of clear and convincing evidence that the letter of May 29, 1984, correctly sets forth the oral agreement of the parties of May 25, 1984, that the security must be acceptable to Plaintiff Akers in that: (a) At all times after May 25, 1984, the parties conducted themselves as if a settlement agreement existed and each side took action toward the performance and consummation of that settlement and, in fact, gave up a trial date; .... The language of the May 29, 1984, letter was thus accepted by the parties as the primary evidence of the existence and terms of the May 25, 1984 settlement agreement.

R., p. 217.

■ Koubourlis first attacks the validity of the district court holding regarding the settlement agreement on the basis of its oral nature. We are not persuaded. A settlement agreement is not required to be in writing to be enforceable. *South Carolina Insurance v. Fisher,* 698 P.2d 1369 (Colo.App.1984). Settlement agreements are a form of contract and they must comply with the requirements normally required of contracts. *See Olson v. Idaho Department of Water Resources,* 105 Idaho 98, 666 P.2d 188 (1983).

■ When enforcing an oral contract, the subject matter must not be within the proscription of the statute of frauds, or if within the statute of frauds, it may be taken out by part performance. *Sims v. Purcell,* 74 Idaho 109, 257 P.2d 242 (1953). The subject matter of the settlement agreement was the ongoing litigation between Akers and Koubourlis arising out of the sale *of stock* for Akers Department Store, Inc.—not a sale of an interest in real property. While an argument may exist as to the status of the leasehold interest which Akers Department Store, Inc., has in the Moscow Mall, as an assignment of an existing lease agreement, it is not required to be in writing. *Hunt v. Hunt,* 110 Idaho 649, 718 P.2d 560 (Ct.App.1985). The agreement cannot be said to be within the provisions of the statute of frauds on any other basis.

Koubourlis' second contention is that insufficient evidence existed to support the finding that the parties understood that a settlement had been reached. Koubourlis argues that the oral agreement was not intended as a final settlement but instead the parties agreed that a writing was required.

In the district court's amended Findings of Fact and Conclusions of Law No. V, it stated:

At the close of settlement discussions, the parties agreed to a detailed settlement of the suit between them and agreed that Plaintiff Akers' attorney would reduce the main points of the settlement agreement to a writing and that, when the settlement had been consummated, the parties would execute a mutual release.

In Finding No. VII, the court stated: "The letter, as shown by the evidence at the

trial, accurately and appropriately summarized and memorialized the ⁀ral agreement of the parties."

Finding No. VIII states: "I find that Defendant Demetrius Koubourlis specifically agreed to a method of consummation of the settlement whereby he agreed to forward $50,000 to Plaintiff in part payment of the amount due under the terms of the settlement."

■ The district court concluded in its opinion that: "The proofs clearly show that after a considerable amount of discussions, the parties arrived at what they believed to be a settlement and departed with the understanding that the terms of the settlement would be reduced to writing." R., p. 185. The district court concluded that the May 29 letter satisfied that requirement of a writing as stated in Finding No. VII.

This ruling is amply supported by the evidence. The evidence includes the depositions of the attorneys for both parties, Mr. Winberry and Mr. Bengtson; the May 29, 1984, letter which sets out the terms of the agreement, R., pp. 113–17; the June 8, 1984, letter confirming the call from Koubourlis' attorney to Akers' attorney agreeing to the May 29 letter's terms, R., p. 118; the $50,000 check from Koubourlis to Akers, R., p. 119; testimony from both parties; confirmation letters pertaining to CAM (Common Area Maintenance) charges in the agreement between the attorneys for both parties dated July 11, 1984, and July 20, 1984, R., pp. 133–34. Koubourlis' other arguments on this issue have been considered but are without merit. We hold that substantial competent evidence supports the trial court finding of an enforceable settlement agreement.

## II. LYLE v. KOUBOURLIS

Lyle was the manager of Akers Department Store, Inc., when the sale negotiations between Akers and Koubourlis commenced. The parties provided that Koubourlis would pay Lyle $19,000 for his shares of stock and Lyle would remain as store manager. Shortly after the sale, Lyle was let *go* by Koubourlis to reduce operating costs. For compensation, Koubourlis executed a $10,000 employment contract buy-out note over to Lyle.

In the ensuing action involving Akers, Lyle, and Koubourlis a motion *in limine* was granted which prevented the past criminal record of Akers from being put in evidence. In response to what Koubourlis believed to be derogatory comments directed at the tenants of Moscow Mall about him, Koubourlis provided Akers' criminal record to a local reporter. A Moscow newspaper published the record.

As a sanction for his actions, the trial court struck Koubourlis' right to a jury trial. The trial was held without a jury, and the court rejected Koubourlis' claim for fraud and misrepresentation.

■ On appeal, Koubourlis argues the trial judge abused his discretion in imposing a sanction denying Koubourlis a jury trial. The court found that Koubourlis' "actions have materially interfered with the lawful administration of the judicial process in this case and that such action has materially prejudiced plaintiffs' right to a fair and speedy trial if a jury trial were to be held." R., Vol. 8, p. 109. As with any discretionary ruling of a trial judge, the decision to impose a sanction will not be overturned absent a clear showing of abuse of that discretion. *Devault v. Herndon*, 107 Idaho 1, 684 P.2d 978 (1984). The right to a trial by jury is an extremely valuable one guarded jealously by this Court. *See State v. Bennion*, 112 Idaho 32, 730 P.2d 952 (1986) (Carving out a narrow exception to the right to a jury trial in the criminal context as to petty traffic infractions not punishable by imprisonment or other criminal sanction.). However, the right is not absolute. For example, like other constitutional protections, the right to a jury trial may be waived. I.R.C.P. 38(d); *Meyer v. Whipple*, 94 Idaho 260, 486 P.2d 271 (1971). But where, as here, a judge strikes a party's demand for a jury as a sanction for violation of a court order, we will review the trial court's discretionary act very closely.

■ We are mindful of the fact that recent opinions of this court have required

trial courts to justify drastic sanctions by creating a record showing that the trial judge considered lesser sanctions and entered findings as to why the lesser sanctions would not be appropriate. *Southern Idaho Production Credit Association v. Astorquia,* 113 Idaho 526, 746 P.2d 985 (1987) (attorney violated a discovery order); *see also, Fitzgerald v. Walker,* 113 Idaho 730, 747 P.2d 752 (1987) (attorney did not diligently seek out and prepare an expert witness). However, in those cases, the trial court ordered sanctions because of the failures of a party's *attorney,* not the party himself.

Here Koubourlis himself directly violated the judge's order *in limine* by intentionally releasing Akers' criminal record to the press. This act could only be calculated to influence potential jurors, thus prejudicing Lyle's position before a jury. Akers would no doubt have been an important witness in Lyle's defense against Koubourlis' counterclaim for fraud in the sale of the store's stock. The information released by Koubourlis raised the inference that Akers may have committed fraud in the past. Lyle, as his fellow business associate and stockholder, could have been tarnished in the jury's mind by association with Akers.

█ Thus, although the trial judge did not create a record reviewing lesser sanctions, we do not remand for further findings. Unlike *Astorquia* and *Fitzgerald, supra,* here the defendant personally and intentionally violated the court's order *in limine* causing prejudice to Lyle. Here lesser sanctions could not unring the bell sounded throughout the community of Moscow that carried the message of Akers' past. The prejudice to Lyle could not be remedied other than by striking Koubourlis' demand for a jury.

Therefore, we affirm the trial court's imposition of the sanction but confine our holding narrowly to the facts before us today. Ordinarily, striking a party's demand for a jury would be an inappropriate sanction; and ordinarily, a trial court must consider lesser sanctions and create a record of findings that demonstrate why lesser sanctions would not be effective before imposing a drastic sanction.

Costs, excluding attorney fees, to respondents.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.

### ON REHEARING

The court granted Koubourlis' petition for rehearing and the case was submitted on the briefs without oral argument. Having considered the briefs, we adhere to our original opinion with the following modification.

Our original opinion 115 Idaho at pages 892 and 893, 771 P.2d at pages 910 and 911 stated incorrectly that Koubourlis violated an order *in limine* granted by the district judge to prevent the past criminal record of Akers from being put in evidence. In his brief, Koubourlis' counsel points out that the motion was never granted and no order issued.

The trial judge reserved ruling on the motion until trial. However, in the meantime counsel for Koubourlis released the information to the local press, preempting any ruling by the court.[1] We are per-

---

1. The dissenting opinion portrays with good detail the conduct of Koubourlis which the district court found to be in violation of the order which the court would have signed had counsel for Koubourlis fulfilled his offer to draft it. Of that conduct the dissenting opinion says:

   The article was based on the contents of a brief by counsel for Koubourlis in opposition to Akers' motion *in limine.* The brief had attached to it an affidavit by counsel for Koubourlis detailing the efforts that he had made to investigate Akers' criminal record. Koubourlis gave a copy of this brief to a

newspaper reporter and told the reporter that he could get a full picture of the dispute over the mall by examining the court's file.

---

do we see a distinction between Koubourlis doing that which he did, or releasing information that had been obtained through discovery.