57 P.3d 505

**Ron ADAMS and Tamara Kugler
Adams, husband and wife,
Plaintiffs–Appellants,**

v.

**Rex REED, Defendant–Respondent.**

No. 27769.

Court of Appeals of Idaho.

Aug. 9, 2002.

Emil F. Pike, Jr., Twin Falls, for appellants.

Penelope Parker, Twin Falls, for respondent.

LANSING, Judge.

This is a personal injury action that was dismissed by the district court as a sanction for plaintiffs' failure to make timely responses to discovery requests or to comply with pretrial orders. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Ron Adams and Tamara Kugler Adams, husband and wife, were tenants in a house owned by Reed. After the Adamses had vacated the house, a dispute arose regarding ownership of property that had been left on the premises. In March 1999, when Tamara returned to the house to retrieve the disputed property, Reed was present and an altercation ensued. Tamara alleged that Reed hit her in the face and pushed her into a door, causing injury to her shoulder and mouth. On April 19, 1999, the Adamses filed a complaint alleging that Reed's actions permanently injured Tamara's shoulder and caused her to lose a tooth. Reed promptly filed an answer and counterclaim in which he denied the Adamses' allegations and asserted that he had sustained injuries inflicted by Tamara.

On December 2, 1999, the district court issued a pretrial order scheduling the trial for February 15, 2000 and a pretrial conference for January 31, 2000. The pretrial order also required that the parties disclose their expert witnesses by December 17, 1999 and complete discovery by January 1, 2000. On January 24, 2000, twenty-three days after the deadline for expert witness disclosure, the Adamses for the first time disclosed the identity of their expert witnesses. One day later, Reed moved to exclude the testimony from those experts. In the alternative, Reed requested a continuance of the trial to allow sufficient time to depose the witnesses. On January 31, 2000, at the hearing on Reed's motion, the parties stipulated to non-binding mediation, so the trial date was vacated. Later that day, the Adamses' attorney died. The Adamses obtained new counsel, and on February 15, 2000, the district court ordered the parties into mediation. The court said that Reed's motion to exclude witnesses would be rescheduled in the event that mediation failed.

Despite the district court's order, no mediation occurred, and on September 15, 2000, the district court issued a notice of intent to dismiss the lawsuit due to inactivity. On October 2, 2000, the Adamses' attorney responded with an affidavit in which he asked the district court to retain the case and stated that within the next thirty days he would schedule mediation. On October 12, 2000, Reed filed a motion for dismissal of the Adamses' complaint pursuant to Idaho Rule of Civil Procedure 41(b) for failure to prosecute. The Adamses did not respond to Reed's motion to dismiss but filed a motion to compel Reed to participate in mediation. At a hearing on October 30, 2000, the district court denied Reed's motion to dismiss and ordered the parties to mediate by November 29, 2000. The district court noted that no progress had been made in the case without the court's intervention, and warned that any further delays or violations of court orders would result in reconsideration of Reed's motion to dismiss. In November, the case was assigned to a new district judge. The mediator, who was selected by the parties, cancelled the mediation process because the

Adamses neither provided their share of payment for his services nor submitted a position paper as the mediator requested.

On January 12, 2001, the district court issued a new order governing discovery and further proceedings. That order set a trial date of June 19, 2001 and a pretrial conference date of June 4, 2001. It also required the disclosure of all expert witnesses by March 6, 2001, completion of discovery responses by May 4, and submittal of a joint pretrial memorandum by May 29, 2001.

On March 7, 2001, Reed's attorney moved to dismiss the action as a sanction for non-response to discovery requests. On March 8, 2001, the Adamses served a disclosure of their intended expert witnesses, and a week later, on March 15, 2001, named an additional expert, a financial expert who was to testify regarding future damages.

On March 19, 2001, the district court heard arguments on Reed's motion to dismiss. The judge listened to the audio recording of the hearing of October 30, 2000 before the district judge who was formerly assigned to the case. Instead of ruling on Reed's motion to dismiss, however, the district court once again ordered the parties into mediation within thirty days. The court said that it would revisit the pending dismissal motion if mediation proved unsuccessful. The district court concluded the hearing by admonishing the Adamses for their repeated failures in the discovery process, and ordered them to immediately provide Reed with copies of all records requested during discovery. The parties participated in mediation in early April, but could not resolve the litigation.

On April 20, 2001, one month after the district court's order to produce records, the Adamses provided Reed with copies of the requested materials. On May 18, 2001, Reed's attorney filed a motion to compel the Adamses to produce medical records from Dr. Robert Porter and physical therapist Dave Little. Reed asserted that the Adamses had identified Porter and Little as expert witnesses, yet had failed to produce any records of their treatment. That same day, Reed's attorney also filed three motions in limine requesting that the district court exclude any evidence of Tamara's claimed dental injury or physical therapy because no records regarding the dental injury or physical therapy had been produced, to exclude any evidence of pharmacy bills because the relevant pharmacy records had not been produced, and to exclude the testimony of the Adamses' financial expert because the expert was not timely disclosed.

Three days later, on May 21, 2001, Reed filed a second motion to compel discovery, requesting the production of records from Drs. Sandison and Johnson regarding their treatment of Tamara since 1999 and requesting records relating to a surgery performed on Tamara at the Magic Valley Regional Medical Center. Reed also filed a fourth motion in limine to preclude the testimony and records of Dr. Porter on the grounds that the Adamses had not produced any of Dr. Porter's records.

On May 28, 2001, having received no input from the Adamses regarding the ordered joint pretrial memorandum, Reed filed a separate pretrial memorandum. Three days later, the Adamses filed their pretrial memorandum. Forty-five minutes before the June 4, 2001 pretrial conference was scheduled to begin, Reed's attorney received the Magic Valley Regional Medical Center records, via fax, from the Adamses' attorney. As a result, Reed's attorney withdrew the motion to compel those records. Additionally, Reed's attorney acknowledged that she had found some of Dr. Porter's records within her file and she therefore withdrew that motion to compel. Regarding the remaining motions to compel, the Adamses' attorney stated that he did not intend to present any testimony from Dr. Sandison or Dr. Johnson relating to treatment that occurred after 1999. Based on this representation, the district court ruled that neither Porter nor Johnson would be allowed to testify to post–1999 treatment.

Addressing Reed's motions in limine, the district court excluded the testimony of Adamses' financial expert and physical therapist due to untimely disclosure, and excluded the pharmacy and physical therapy records due to inadequate production of the documents. The court also barred mention of the alleged dental injury at trial because neither

dental records nor dental experts had been disclosed.

The district court then took up Reed's motion to dismiss the action as a sanction for discovery violations, noncompliance with pretrial orders, and untimely submission of the Adamses' pretrial memorandum. The district court concluded that dismissal was an appropriate sanction and granted the motion. The Adamses filed a motion for reconsideration, which the district court denied. This appeal followed.

## II.

## ANALYSIS

■ A trial court possesses authority to sanction parties for failure to comply with discovery orders or pretrial orders and for failure to seasonably supplement responses to discovery. I.R.C.P. 16(i), 26(e)(4), and 37(b). Permissible sanctions include dismissal of the action. I.R.C.P. 37(b)(C). The imposition of sanctions is discretionary with the trial court, and that court's decision will be overturned on appeal only for a manifest abuse of discretion. *S. Idaho Prod. Credit Ass'n v. Astorquia,* 113 Idaho 526, 528, 746 P.2d 985, 987 (1987); *Quick v. Crane,* 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986); *Fish Haven Resort, Inc. v. Arnold,* 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991).

■ The trial court's discretion is not unfettered, however, particularly where the ultimate sanction, dismissal of a party's claim, has been imposed. In *Ashby v. W. Council, Lumber Prod. & Indus. Workers,* 117 Idaho 684, 791 P.2d 434 (1990), the Idaho Supreme Court enumerated factors that must be expressly considered by the trial court in deciding whether dismissal with prejudice is warranted:

> The two primary factors are a clear record of delay and ineffective lesser sanctions, which must be bolstered by the presence of at least one "aggravating" factor, including: 1) delay resulting from intentional conduct, 2) delay caused by the plaintiff personally, or 3) delay causing prejudice to the defendant. The consideration of these factors must appear in the record in order to facilitate appellate review.

*Id.* at 686–87, 791 P.2d at 436–37 (citations omitted). *See also Blaser v. Riceci,* 119 Idaho 834, 835–36, 810 P.2d 1120, 1121–22 (1991); *Astorquia,* 113 Idaho 526, 746 P.2d 985; *Fitzgerald v. Walker,* 113 Idaho 730, 747 P.2d 752 (1987); *Devault v. Steven L. Herndon,* 107 Idaho 1, 684 P.2d 978 (1984).

■ Before addressing the district court's application of these factors, we must make note that transcripts of some of the pertinent hearings have not been provided as part of the record on appeal. In rendering its dismissal decision, the district court referred to warnings that had been given and oral orders that had been issued from the bench during the hearings of October 30, 2000 and March 19, 2001, but transcripts of those hearings are not before us. Missing portions of the record are presumed to support the action of the trial court, *Kugler v. Drown,* 119 Idaho 687, 690, 809 P.2d 1166, 1169 (Ct.App.1991), and we therefore presume that transcripts of those hearings would substantiate the district court's findings that we now review.

The district court's finding of a clear record of delay is amply supported by the record before us, which demonstrates that the Adamses were routinely late in responding to discovery, were repeatedly noncompliant with deadlines set out in pretrial orders, and on one occasion failed to engage in court-ordered mediation.

■ As to the ineffectiveness of lesser sanctions, the district court found that during the hearings of October 30, 2000 and March 19, 2001, the Adamses were specifically warned that failure to comply with discovery could result in dismissal, and they were admonished to immediately respond to outstanding discovery requests. As noted above, we presume this finding to be supported by the unavailable hearing transcripts. According to *Ashby,* explicit warnings are among the lesser sanctions that are appropriate before imposition of the drastic sanction of dismissal. *Ashby,* 117 Idaho at 687, 791 P.2d at 437. *See also Fitzgerald,* 113 Idaho at 733, 747 P.2d at 755. Therefore, we perceive no error in the district court's holding that the two "primary factors" required by *Ashby* are present here.

**40**

The district court also found that all three of the "aggravating" circumstances identified in *Ashby* were applicable. In the limited record before us, we find support for at least two of these, and *Ashby* requires that only one be present. As to the first aggravating factor, delay resulting from intentional conduct, the district court could reasonably infer that in light of the multiple warnings and orders for immediate discovery compliance that had been directed to the Adamses and their attorneys, the continued noncompliance with discovery deadlines was intentional and not the result of inadvertence.

 The third aggravating factor, delay causing prejudice to the defendant, is also demonstrated. The Adamses argue that in light of the district court's orders in limine excluding all of the undisclosed or late-disclosed witnesses and records, Reed could not be prejudiced by those discovery violations and the Adamses should have been allowed to proceed to trial with the evidence that remained. This argument is based on the false premise that Reed could be prejudiced only by the use against him of untimely disclosed evidence; it overlooks the prospect that the undisclosed or untimely disclosed records may contain information helpful to the defense that could be utilized to rebut the Adamses' claims. For example, records of Drs. Sandison and Johnson pertaining to their treatment of Tamara after 1999 could include information that would be useful to rebut those physicians' testimony regarding their treatment of Tamara during 1999 or to rebut testimony of other witnesses. Thus, the lack of access to all of the relevant records could be prejudicial to Reed, even though the Adamses would not be allowed to place the records in evidence. A litigant should not be allowed to shelter potentially damaging evidence by refusing to produce it and thereby provoking the "sanction" of having the harmful material excluded from trial.

Here, the district court made the requisite findings before imposing the severe sanction of dismissal, and those findings draw support from the record. The district court acted within the bounds of its discretion and consistent with applicable legal standards.

Therefore, the dismissal order will not be disturbed on appeal.

 Reed requests an award of attorney fees on appeal pursuant to I.C. § 12–121, under which attorney fees may be awarded if the appeal has been brought or defended frivolously, unreasonably or without foundation. *See Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997); *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Although the Adamses' appeal has not been successful, we do not find it to be frivolous. Therefore, no attorney fees will be awarded.

The order of the district court dismissing the Adamses' complaint is affirmed. Costs, but not attorney fees, are awarded to respondent.

Chief Judge PERRY and Judge Pro Tem HORTON concur.