710 P.2d 606

**Joseph F. KREPCIK and Helen M. Krepcik, husband and wife, Plaintiffs-Respondents,**

**v.**

**Leon S. TIPPETT, Idaholding, a partnership consisting of David L. Tippett and Kenneth A. Tippett, and Tipco Farm Service, a partnership consisting of Leon S. Tippett, David L. Tippett and Kenneth A. Tippett, Defendants-Appellants.**

**No. 15544.**

Court of Appeals of Idaho.

Oct. 3, 1985.

Rehearing Denied with Addendum Dec. 9, 1985.

Petition for Review Denied Jan. 29, 1986.

Mark W. Russell (argued), and Ann Legg, Kneeland, Laggis, Korb, Collier, Benjamin & Russell, Ketchum, for defendants-appellants.

Fred D. Decker, Decker & Hollifield, P.A., Twin Falls, for plaintiffs-respondents.

BURNETT, Judge.

This appeal concerns a farm lease and a related option to purchase. The tenants, Leon Tippett and two partnerships known as Idaholding and Tipco Farm Service,[1] defaulted in their rent payments. The landlords, Joseph and Helen Krepcik, terminated the lease and extinguished the purchase option. However, the tenants remained on the farm and the landlords eventually sued for possession. After a bench trial the district court upheld the termination of the lease, held the purchase option to be of no further effect, restored possession of the property to the landlords, and fixed the fair rental value of the farm during the tenants' holdover period. For reasons explained below, we affirm the judgment.

The tenants have presented four principal contentions on appeal: (1) The district judge should have postponed the trial to allow more time for counsel to prepare. (2) The landlords waived their right to terminate the lease. (3) The purchase option was validly exercised after the tenants' default had been cured. (4) The court erroneously determined the fair rental value of the farm. We turn first to the question of postponing the trial.

I

The landlords' complaint was filed in September, 1983. The tenants did not answer until the following December. The landlords promptly moved for summary judgment and requested a trial setting if the motion were denied. The court denied the motion and scheduled a trial for February 22, 1984. Prior to the trial date, for reasons not disclosed by the record, the tenants' attorney sought and obtained leave to withdraw from the case. The trial was continued until March 6. The tenants obtained new counsel, who moved for a second continuance to allow greater discovery and trial preparation. The motion was denied.

The tenants now assert that the district judge unduly hastened the trial. We disagree. As the foregoing chronology reveals, the case was tried six months after the complaint was filed, three months after the complaint was answered, and two months after a trial setting had been requested. If these time frames seem short to some members of the bench and bar, it simply shows that until recently, Idaho, like other states, contained a multitude of local legal cultures where long court delays were regarded as normal, if not acceptable. But times are changing. In *Viehweg v. Thompson*, 103 Idaho 265, 269, 647 P.2d 311, 315 (Ct.App.1982), a case we have quoted on several occasions, we observed:

> The days are over—if indeed they ever existed—when litigants and their attorneys could dictate the pace of the judicial process. A well-founded public outcry over delay in the administration of justice now requires that judges at all levels play an active role in managing their calendars.

Of course, efficiency cannot be pursued blindly at the expense of justice. Where, as here, a litigant's attorney has withdrawn, the court must strive to treat both sides fairly. We believe the judge endeavored to do so in this case. He articulated three interrelated reasons for denying a second continuance. First, he noted that if the March 6 trial date were vacated, the trial could not be reset on his congested calendar for many months. Second, the

---

1. The lease and option actually were executed by different persons and entities. However, they are closely interrelated and, for ease of discussion, they will be collectively termed the "tenants."

landlords would be severely prejudiced by such delay, due to the potential loss of a pending sale of the farm to a third party. Third, the court observed that the tenants themselves were partially responsible for any hardship ascribed to the March 6 trial date. Although the judge did not amplify this observation, the record reveals pertinent facts. The tenants, as noted, did not answer the landlords' complaint for three months. The order allowing counsel to withdraw was entered on February 7, 1984, and it explicitly mentioned the March 6 trial date. However, the tenants did not secure new counsel for nearly two weeks, virtually halving their attorney's preparation time.

These facts must be viewed in light of the well-established principle that a motion for continuance is addressed to the trial judge's sound discretion. *E.g., State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973); *Pauley v. Salmon River Lumber Co.,* 74 Idaho 483, 264 P.2d 466 (1953). The exercise of such discretion will not be disturbed on appeal unless it was so arbitrary that it deprived a litigant of a fundamentally fair trial. *See generally Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). In this case, the judge's stated reasons for denying a second continuance cannot be characterized as arbitrary. We conclude that his discretion was not abused.

## II

The tenants next contend that by accepting delinquent rental payments, the landlords waived their right to terminate the lease. Waiver is a voluntary, intentional relinquishment of a known right or advantage. *Scott v. Castle,* 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). Our Supreme Court has held that a question of waiver turns primarily upon intent. "In order to establish waiver the intention to waive must clearly appear...." *Neitzel v. Lawrence,* 40 Idaho 26, 31, 231 P. 423, 425 (1924). Because intent is a factual determination, the Supreme Court has said that it will eschew any per se legal test of waiver, preferring instead "to judge each situation on a case by case basis." *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 521, 650 P.2d 657, 663 (1982). A trial court's finding of waiver, or the lack of it, will not be disturbed if it is supported by substantial evidence. *Id.* at 518, 650 P.2d at 660.

Here, the trial court found no waiver. The pertinent facts are uncontroverted. The lease was executed in the spring of 1979. Its initial term ran to December 31, 1981, and it was renewable for two additional years. The lease called for two annual rental payments—$15,000 on the 10th day of each January and $10,000 on the 10th day of each December. It provided a fifty-day period for curing defaults in rental payments.

From 1979 to January, 1981, all payments were made. In December, 1981, and in January, 1982, the tenants made no payments. In April, 1982, the landlords gave notice of default and of their intent to terminate the lease. However, in June of that year, a $15,000 payment was received and an extension was granted for the remaining $10,000, which eventually was paid.

During the 1982 crop season, the landlords incurred expenses reimbursable by the tenants under the lease. In December, the tenants made several payments totaling $10,000; but when the reimbursable expenses were deducted, an unpaid balance remained on the December 10 rental installment. Moreover, on January 10, 1983, the tenants missed the $15,000 rental payment. The landlords sent numerous communications to the tenants about these problems. In November, 1982, they sent an itemization of the reimbursable expenses, coupled with a request for payment. In January, 1983, they sent a letter referring to the balance outstanding in December and stating their intent to "call for a termination" of the lease. A few days later they sent another letter, adjusting their calculation of the December balance and adding the unpaid January installment. No payments were received. On April 21, 1983, in a letter written by their attorney, the land-

lords notified the tenants that they had "elect[ed] to terminate their lease...."

However, as noted earlier, the tenants did not vacate the premises. They continued farming. Negotiations regarding a possible new lease produced no agreement. During the summer the tenants made, and the landlords accepted, payments totaling nearly $17,000. These payments covered the January 10, 1983, rental installment and the balance of the December 10, 1982, installment.[2] The tenants paid nothing for use of the farm after the termination. In September, 1983, the landlords filed the instant suit, seeking a judicial declaration that the lease had been terminated.

Upon these facts, cogent arguments have been made by able counsel in support of, and in opposition to, the existence of a waiver. The tenants' attorney has argued that by taking no legal action until September, 1983, while in the meantime accepting payments of the amounts in default, the landlords waived the defaults and rendered the termination a nullity. The landlords' counsel contends that the suit was delayed by unsuccessful negotiations to create a new lease and by the practical difficulties of seeking to dispossess tenant farmers while crops are growing. He urges that the acts of terminating the lease and of collecting overdue rent were not inconsistent.

These contrasting views plainly illustrate the difficult task thrust upon district judges by a fact-oriented, case by case approach to waiver. Indeed, our Supreme Court implicitly may have narrowed this task in *Riverside Development Co. v. Ritchie, supra.* Although *Ritchie* embraced the ad hoc approach and "rejected the adoption of rigid standards," 103 Idaho at 521, 650 P.2d at 663, it noted two fact patterns where a waiver question may yield a clear result. If overdue lease payments are made and accepted after the landlord sues to regain possession of the premises,

no waiver exists. Indeed, that is the result announced in *Ritchie* itself. Conversely, if overdue payments are made after the notice of default but before the notice of termination, "[c]ertainly ... it can be said that the lessor has ... evidenced his intent to waive the breach and to continue in the lease arrangement. Annot., 109 A.L.R. 1267, 1269–74 (1937)." *Ritchie,* 103 Idaho at 520, 650 P.2d at 662.

■ Unfortunately, the instant case occupies an intermediate position between those poles. The overdue payments were made and received after notice of termination but prior to suit. Of this unhappy category of cases, *Ritchie* simply says "the intent of the lessor to waive the breach by his acceptance of rent is far from clear." *Id.* Thus, in the present appeal, we are left with the unadorned axioms with which we began this discussion—that waiver turns upon intent, that such intent must clearly appear in the record, and that the trial court's factual determination must be upheld if supported by substantial evidence. Applying these axioms to the facts and available inferences in this case, we conclude that substantial evidence supports the district judge's finding that no waiver was intended by the landlords' conduct. Consequently, we sustain the judge's declaration that the lease was validly terminated.

■ Before leaving this subject, we note that the tenants also challenge the sufficiency of the notice of default. They invite attention to the fact that the January letter, referring to a default and stating an intent to "call for a termination," referred only to the obligation owed in December 1982, and did not mention the January, 1983, rental installment. However, we do not think the letter should be viewed in isolation. It was mailed after the January payment also had become due. It was supplemented within a few days by another

---

**2.** In addition to these installments, the landlords claimed prelitigation attorney fees and interest on tardy payments. However, the district court ultimately entered a money judgment only for the unpaid fair rental value of the property while the tenants held over, together with costs and attorney fees incurred in litigation. The landlords' entitlement to an award of attorney fees in litigation has not been challenged on appeal, and we will not address it *sua sponte.*

letter referring to the January rent. Although the second letter was not sent by certified mail with return receipt requested, as provided in the lease for notices of default, the tenants have not denied receiving it. Upon these facts, to hold notice of the default inadequate would be to exalt form over substance. This we decline to do.

### III

■ The tenants next assert that the purchase option still should be enforced because it was exercised before the lease was terminated. They rely in part upon a letter they wrote on December 24, 1983, saying that they "intend[ed] to exercise the purchase option" and were "open-minded and optimistic that an alternative plan could be worked out." This letter was sent long after notice of termination had been given and suit had been filed. Because we have upheld the termination, we must also conclude, by parity of reasoning, that the purchase option had been extinguished when this letter was written. The letter, as its language suggests, was in reality nothing more than an invitation to negotiate some kind of "alternative plan."

■ The tenants also rely upon a letter written in September, 1982, after defaults on the December, 1981, and January, 1982, rental payments had been cured. The letter expressed an "intent to exercise the purchase option sometime during the year.... We will discuss this with you at a later date in an attempt to determine the most advantageous date for you *and* us." (Emphasis original.) No agreement was reached at any "later date." This letter, by itself, cannot be viewed as a binding acceptance by the tenants of the sale offer embodied in the option. Consequently, it cannot be treated as creating a contract enforceable against the landlords.

### IV

■ Finally, the tenants challenge the court's finding that the fair rental value of the farm during 1983 was $25,000. The court evidently used this figure in computing the landlords' compensation for the tenants' occupancy of the farm during the holdover period. The tenants argue that the $25,000 annual rental specified in the lease represented a "premium" rent, and included consideration for the purchase option. They also presented evidence that during the unsuccessful negotiations for a new lease in 1983, the landlords offered to accept $20,000 as a year's rent. However, the landlords presented testimony to the contrary, stating that the $25,000 figure had not included a "premium." Upon this controverted evidence, the district judge was at liberty to use the lease as a guide and to infer that $25,000 represented the fair rental value. His finding is not clearly erroneous and will not be disturbed. I.R. C.P. 52(a).

The judgment of the district court is affirmed. Costs, exclusive of attorney fees (which have not been requested), are awarded to respondents Krepcik.

WALTERS, C.J., and SWANSTROM, J., concur.

### ADDENDUM

BURNETT, Judge.

The respondents have petitioned for rehearing. However, they urge no change in the Court's decision on the merits of the case. Rather, they seek leave to make a tardy claim of attorney fees on appeal. (Our decision on the merits is the subject of a petition for review filed in the Supreme Court by the appellants.)

Rule 41(a), I.A.R., provides that "[a]ny party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed by such party...." In this case, respondents failed to do so. Respondents' counsel has informed us, with commendable candor, that failure to make a timely claim was due to "inadvertent oversight and failure to read [the rule]." Counsel urges us to apply another part of the rule which authorizes an appellate court to "permit a later claim for attorney fees under such

702

conditions as it deems appropriate." Counsel argues that respondents are entitled to attorney fees as provided in the lease executed by the parties.

*Entitlement to Fees.* In footnote 2 of our principal opinion, we have declined to review, *sua sponte,* an unchallenged award of. attorney fees by the trial court. However, the instant claim for attorney fees on appeal squarely presents a question of entitlement. We note that respondents, as landlords, terminated the lease and sued for possession of the property. This situation is analogous to termination of a real estate installment sale contract. Our Supreme Court has held that a seller who terminates such a contract and who forfeits the buyer's interest cannot claim attorney fees under the same contract. "Having terminated the contract, [the seller] cannot later assert the attorney fee clause in it...." *Ellis v. Butterfield,* 98 Idaho 644, 650, 570 P.2d 1334, 1340 (1977) (footnote omitted). The contract clause discussed in *Ellis* is closely similar to the lease provision at issue here.

*Tardiness of Claim.* We are not persuaded that "appropriate" conditions for allowing late claims of attorney fees under Rule 41(a) embrace mere oversight and failure to read the governing rule. As a practical matter, such a broad exception would swallow whole the requirement that attorney fees be claimed in a party's "first appellate brief." Respondents, relying upon *Industrial Investment Corp. v. Rocca,* 102 Idaho 920, 643 P.2d 1090 (Ct.App. 1982), contend that their claim for attorney fees should be viewed as an implied, subsidiary issue. However, *Rocca* discusses preservation of a trial-level attorney fee claim, following an appeal and a remand. Nothing in *Rocca* alters the application of Rule 41(a) to the instant case.

■ Accordingly, we conclude that the respondents' petition for rehearing should be denied. We acknowledge, of course, that our conclusion rests upon rules of case law and procedure issued by our Supreme Court. That Court is better situated than we to interpret the meaning and intent of

its own pronouncements. The appellants' petition for review in this case remains pending before the Supreme Court; and the respondents, if they disagree with our interpretation today, may file such a petition as well.

WALTERS, C.J., and SWANSTROM, J., concur.