888 P.2d 790

CANNON BUILDERS, INC., an Idaho corporation, Plaintiff–Respondent,

v.

Eugene Leroy RICE, individually and d/b/a Vista Pawn, and Aztec Precast, Inc., an Idaho corporation, Defendants–Appellants.

CROOKS INDUSTRIES, INC., Plaintiff–Respondent,

v.

Eugene Leroy RICE, individually and d/b/a Vista Pawn, and Aztec Precast, Inc., an Idaho corporation, Defendants–Appellants.

No. 20543.

Court of Appeals of Idaho.

Jan. 19, 1995.

Sallaz, Doolittle & Gordon and Sisson & Sisson, Boise, for appellants.  Peter C. Sisson argued.

Schiller & Schiller, Nampa, for respondent Crooks Industries.  Edwin G. Schiller argued.

Lojek, Gabbert & Strother, Boise, for respondent Cannon Builders.  Jeffrey A. Strother argued.

PERRY, Judge.

In this case, we are asked to review awards to two separate plaintiffs against the same defendants following a consolidated trial.  We must decide whether the district court properly admitted evidence of a liquidated damages clause; whether the attorney for defendants should have been allowed to testify; and whether the district court properly denied the defendants' motions for directed verdict.  We affirm the judgment entered in favor of Cannon Builders, Inc., but reverse the judgment entered in favor of Crooks Industries, Inc.

## FACTS AND PROCEDURE

In May of 1989, Cannon Builders, Inc. (Cannon) was awarded two contracts with the Idaho Department of Transportation for roadwork on State Highway 21.  To fulfill these contracts, Cannon entered into a subcontract with McCartan Precast (McCartan) for the supply of concrete guardrails.  McCartan Precast was owned and operated by Alex McCartan.  Under a separate contract, Crooks Industries, Inc. (Crooks) provided McCartan with 3400 pieces of steel rebar for the production of the guardrails.

McCartan, in need of money to complete the obligation under the contract with Cannon, borrowed $66,000 from Eugene Rice.  As part of the loan agreement, McCartan assigned all payments from the Cannon contract to Rice and granted Rice a security interest in all of McCartan's assets as collateral for the loan.

In August of 1989, Alex McCartan was incarcerated on an unrelated matter.  Unable to meet his loan obligation, he turned over all of McCartan's assets to Rice in lieu of a foreclosure.  Once in possession of McCartan's assets, Rice entered into a written agreement with Cannon in an attempt to fulfill Cannon's need for the concrete guardrails.  Using the guardrails that Rice was able to produce, Cannon finished the road project on October 18, 1989, some thirty-five

days beyond its contract deadline. Under the contract with the Idaho Department of Transportation, Cannon was required to pay $700 for each day beyond the deadline the project was unfinished, as liquidated damages.

After McCartan was released from custody, he initiated lawsuits against Cannon and Rice. Cannon answered, bringing a third party complaint against Rice, claiming a breach of their contract for an alleged failure to produce the guardrails in a timely fashion. Rice filed a counterclaim against Cannon, alleging that Cannon had failed to pay the full amount due under the contract. In a separate action, Crooks sued Rice, seeking payment for the rebar it had delivered to McCartan that Rice had used in production of the guardrails when Rice took possession of McCartan's assets. McCartan was eventually dismissed from the actions, and the remaining claims, Cannon versus Rice and Crooks versus Rice, were consolidated for trial.

Following a jury trial, Cannon and Crooks both were awarded judgments against Rice. The jury found against Rice on his counterclaim. Rice appeals from the judgments entered below, claiming: (1) the district court erred in admitting evidence of the liquidated damages clause in Cannon's contract with the Idaho Department of Transportation, and in submitting to the jury Cannon's claim for damages predicated upon the liquidated damages that Cannon had to pay the state; and (2) the district court erred by refusing to grant Rice a continuance and by refusing, in the alternative, to allow Rice's counsel to testify at trial; and (3) the district court erred by denying Rice's motions for directed verdict on Crooks' claims.

## ANALYSIS

### A. CANNON VERSUS RICE

#### 1. Evidence of Liquidated Damages

Cannon completed the highway project thirty-five days late, and was consequently liable to the state for approximately $24,000 in liquidated damages pursuant to their contract. Cannon claimed that six days of this delay occurred because Rice unjustifiably

ceased performance under his contract to provide guardrails. Cannon therefore sought to recover an award equal to six days of those liquidated damages from Rice. Rice argues that the district court erred by allowing the admission of evidence regarding the liquidated damages clause in the contract between Cannon and the state and in denying Rice's motion for a directed verdict on their element of Cannon's damages claim. At trial, Rice, through a motion in limine, sought to have any such evidence excluded. The district court, in denying the motion, stated:

> Well, they've got to put on certain types of proof to prove that [claim], but there can be consequential damages which a person has a reason to know of at the time of contracting. I don't know. I assume it's coming in that way. I don't know if those are reasonably foreseeable or not and it assumes there will have to be some proof on that and we'll see where we are.

Following trial, Rice sought an order striking the evidence or in the alternative, a directed verdict with respect to Cannon's claim to recoup from Rice part of the liquidated damages that Cannon was obligated to pay the state. This motion was also denied.

■ Rice frames his argument regarding the liquidated damages clause in terms of relevance. First, Rice argues that the Rice–Cannon agreement itself does not adopt the liquidated damages clause from Cannon's contract with the Department of Transportation, nor was there any evidence indicating its adoption. Second, Rice claims it was error to admit the liquidated damages clause as proof of Cannon's consequential damages arising from Rice's breach of contract because no evidence was presented showing that Rice was aware of the clause.

With respect to Rice's first argument, we agree. If the evidence of liquidated damages was being presented solely to interpret the meaning of the Rice–Cannon agreement, it clearly would have been irrelevant. We disagree with Rice's second argument, however, and conclude that the evidence was properly admitted to show Cannon's consequential damages.

We first note that our review of questions of relevancy is de novo. *Lubcke v. Boise City/Ada County Hous. Auth.*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). Idaho Code § 28–2–715(2)(a), pertaining to a buyer's damages when a seller breached a contract for the sale of goods, provides that:

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . .

This Court has previously held that:

Consequential damages need not be precisely and specifically foreseen; but they must have been reasonably foreseeable, and within the contemplation of the parties, when the contract was made. Whether such damages were reasonably foreseeable and within the contemplation of the parties is a question of fact.

*Strate v. Cambridge Telephone Co., Inc.*, 118 Idaho 157, 160–61, 795 P.2d 319, 322–23 (Ct. App.1990) (citations omitted).

The evidence of the liquidated damages clause was relevant to the injury suffered by Cannon. If Rice had reason to know that Cannon faced exposure for liquidated damages in the event of a breach by Rice, then payment of the liquidated damages could properly be considered as proof of Cannon's consequential damages stemming from Rice's breach of contract. We disagree with Rice's contention that the jury was presented insufficient evidence to conclude that Rice had reason to know of the liquidated damages clause in Cannon's contract with the state. Joseph Cannon testified that liquidated damages were discussed at the time the agreement was reached with Rice and that Rice knew Cannon's time for performance on the state contract was quickly running out. It was for the jury to determine whether Rice did foresee or should have foreseen the liquidated damages as an injury to Cannon in the event of a breach by Rice. We conclude that the evidence was relevant, and therefore properly admitted. We further conclude that the district court did not err in denying Rice's motion for a directed verdict on this claim.

**2. Testimony of Rice's Counsel**

**(a) Motion to Vacate.**

Rice's trial counsel, William J. Litster, also represented Rice during the contract negotiations with Cannon. As such, he was present during many of the meetings at issue in this case. Prior to an earlier trial date in May of 1992, Litster moved to vacate the trial date because he felt he would be called as a witness and needed to secure different counsel for Rice. The trial was rescheduled for other reasons, however, and no hearing on the motion for continuance was ever held. The trial was eventually held in January of 1993. After opening arguments to the jury, Litster renewed his request for a continuance, again maintaining that Rice would be required to obtain other counsel because of Litster's knowledge of material facts. This second motion to continue the trial date was denied. When Litster again renewed his motion for a continuance following the presentation of evidence by Cannon and Crooks, the district court denied the motion, stating:

In this situation, I can see now that it does present a more serious problem having heard all the evidence in the case up to this point. I think this is a situation where counsel should not have continued to handle the case. I think this is a situation where counsel should have spun the case off to somebody else. The file does not disclose this level of involvement, but surely Mr. Litster was aware of it and in fact he made a motion in May so that he could get the trial vacated so that somebody else could handle it. Now the case was bumped because of [the] Department of Corrections [case]? . . . And [the court] bumped this case because that was still in progress so nobody noticed up the motion. I won't hold it against anybody that the motion wasn't noticed up in May, although I noticed when I looked through the file that it was filed only four days prior to the May 12th trial setting. Then nothing is done with it at all. The trial is moved from May to January and Mr. Litster con-

tinues to handle the case, he doesn't get substitute counsel. Cannon and Crooks Industries have all put on their proof, we've gone on for two days, and I think it would be an extreme abuse of this court's discretion to vacate the trial at this time.

■ A lower court's decision on a request for continuance or vacation of a trial setting is governed by an abuse of discretion standard. *State Dept. of Health and Welfare v. Altman,* 122 Idaho 1004, 1009, 842 P.2d 683, 688 (1992); *Krepcik v. Tippett,* 109 Idaho 696, 699, 710 P.2d 606, 609 (Ct.App.1985).

This case presents a situation similar to that before the Idaho Supreme Court in *Fitzgerald v. Walker,* 113 Idaho 730, 747 P.2d 752 (1987). In *Fitzgerald,* plaintiffs' counsel sought a continuance based on his inability to secure an expert witness in a legal malpractice claim. The Idaho Supreme Court upheld the denial of the motion for the continuance, holding that "the situation in the case at bar was precipitated by plaintiffs' counsel's lack of diligence in securing expert opinions on liability, and not by mere fortuity." Likewise, this Court upheld the denial of a motion for a continuance in *Krepcik v. Tippett,* 109 Idaho 696, 710 P.2d 606 (Ct.App. 1985), where the party seeking the continuance was at least partially responsible for its necessity.

Although the facts of *Fitzgerald* and *Krepcik* are somewhat different from this case, the general principle that a party should not be granted a continuance for reasons of its own manufacturing fully applies. In this case, at least seven months prior to trial Litster was aware that it may become necessary for him to testify. His lack of diligence in securing other counsel was a sufficient reason to deny the motion to vacate or continue the trial. We conclude, therefore, that the district court did not abuse its discretion in refusing a continuance of the trial at Rice's request.

(b) Refusal to allow Litster to testify.

■ As an alternative to his request for a continuance, Litster requested that he be allowed to testify at the trial. This request was denied by the district court, which ruled that in addition to the self-inflicted nature of the problem, the testimony would not be allowed because all matters that Litster would testify to could be adequately covered by other evidence.

■ Rice asserts it was error not to allow Litster to testify. The analysis of the district court appears to be based upon I.R.E. 403, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

A lower court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno,* 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark,* 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct.App.1989).

In this case, the district court expressly noted that allowing Litster to testify would be needless presentation of cumulative evidence. Implicit in the denial, however, was also the finding that allowing the attorney representing Rice at trial to testify on Rice's behalf would confuse and mislead the jury.

We find no abuse of discretion in the district court's determination that Litster should not have been allowed to testify. Although Litster's testimony may have aided Rice's defense by reinforcing Rice's understanding of the agreement, it would not have been substantially more complete than Rice's accounts and would have reiterated Rice's statements. On the other hand, allowing an attorney involved in the trial to testify would be extremely confusing to the jury, seriously blurring the line between advocate and witness.

## B. CROOKS VERSUS RICE

At trial, Crooks advanced two theories to recover payment from Rice for the rebar it had supplied to McCartan.[1] First, Crooks

---

1. The complaint filed in the Crooks–Rice action was not included in the record on this appeal.

At trial, Crooks' theories of recovery evidently were limited to breach of a third party beneficia-

claimed it was entitled to payment as a third party beneficiary of the Rice–Cannon contract. Alternatively, Crooks argued that it was entitled to payment under an unjust enrichment theory. Following presentation of the evidence, Rice sought a directed verdict arguing that as a bona fide purchaser of McCartan's assets, he was not unjustly enriched by his acquisition of the rebar. Rice also sought a directed verdict on the third party beneficiary theory, claiming that insufficient evidence had been produced at trial to support a verdict on that ground. The district court denied both motions and the jury returned a general verdict in favor of Crooks. The general verdict did not specify upon which theory the award was based.

■ We first note that whether a motion for directed verdict should be granted is purely a question of law upon which the parties are entitled to full review by the appellate court without special deference to the views of the trial court. On review, we apply the same standard that governed the trial court's decision—whether, viewing the evidence in the record in the light most favorable to the non-moving party, there is substantial evidence upon which a jury could have properly found in favor of the non-moving party.[2] *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986); *City of Lewiston v. Lindsey,* 123 Idaho 851, 854, 853 P.2d 596, 599 (Ct.App.1993).

### 1. Third Party Beneficiary Claim

The Idaho Supreme Court has previously set forth the law relating to third party beneficiary recovery, stating:

This Court has previously recognized the right of a third party to maintain an action on a contract executed for the benefit of such third party. *Davis v. Nelson–Deppe, Inc.,* 91 Idaho 463, 424 P.2d 733 (1967); *Dawson v. Eldredge,* 84 Idaho 331, 372 P.2d 414 (1962); I.C. § 29–102. However, "before recovery can be had by a

third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary." *Dawson, supra,* at 337, 372 P.2d at 418, (quoting *Sachs v. Ohio Nat. Life Ins. Co.,* 148 F.2d 128, 131 (7th Cir.1945)).

In the more recent case of *Stewart v. Arrington Construction Co.,* 92 Idaho 526, 446 P.2d 895 (1968), we further stated that the contract itself must express an intent to benefit the third party. "This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered." *Id.* at 532, 446 P.2d at 901. In *Stewart,* we concluded that the trial court should have considered the provisions of the contract to see if it "manifested an intent to benefit a third person." *Id.*

*Adkison Corp. v. American Bldg. Co.,* 107 Idaho 406, 409–10, 690 P.2d 341, 344–45 (1984). *See also Baldwin v. Leach,* 115 Idaho 713, 769 P.2d 590 (Ct.App.1989); 17A AM.JUR.2D *Contracts* § 440 (1991); RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981).

■ Normally, the intent of the parties should be ascertained from the language of the contract. *Christensen v. Ransom,* 123 Idaho 99, 105, 844 P.2d 1349, 1355 (Ct.App. 1992). Where the language of the contract is ambiguous and cannot be understood from the language employed, the intent of the parties becomes a question of fact to be determined in light of extrinsic evidence. *USA Fertilizer, Inc. v. Idaho First Nat. Bank,* 120 Idaho 271, 273, 815 P.2d 469, 471 (Ct.App.1991).

■ At trial, the written agreement between Cannon and Rice was entered into evidence. With respect to creditors, the agreement states, "Aztec and Roy Rice agrees to turn over barriers with no cloud on

---

ry contract and unjust enrichment. The jury was given Instruction No. 13, which advised the jury that in order to find for Crooks, it would have to find either unjust enrichment or that Crooks was a third party beneficiary of the contract between Rice and Cannon.

**2.** Because the actions were consolidated for trial, Crooks was also entitled to rely on any evidence produced by Cannon in the presentation of its claim against Rice. We have considered the evidence presented by both parties in reviewing Rice's motions for a directed verdict.

ownership. As other bill collectors come out of the woodwork, they will not be Cannon's problem." Cannon's representative testified that his desire was to cut his losses. He further stated that he had been willing to pick up the payroll and pay certain defined creditors of McCartan. Cannon "assumed," however, that if it didn't pay any of McCartan's other creditors, that Rice would. Crooks failed to produce evidence that Cannon and Rice had, in fact, specifically agreed that Rice would be responsible for McCartan's outstanding indebtedness.

Rice testified at trial that he had never heard of Crooks Industries and that it had never been his intention to pay the creditors of McCartan Precast as part of his contract with Cannon.

The evidence presented in this case is insufficient to support the conclusion that Crooks was a third party beneficiary to the Rice–Cannon agreement. The contract does not state that Rice will satisfy McCartan's creditors. Cannon's representative testified regarding his desire not to pay any more creditors and his assumption that Rice would pay them. This evidence, however, is insufficient for the jury to conclude that Rice and Cannon agreed that Rice would be responsible for creditors of McCartan. Though this evidence may support Rice's assumption of debts to previous McCartan creditors who possessed legitimate liens and security interests on materials incorporated into the guardrails produced for Cannon, Crooks had no such security interest. Crooks' proper cause of action for recovery would be against Alex McCartan and McCartan Precast. This cause of action would have no relation to Cannon and when Crooks "came out of the woodwork," it had no valid claim against Cannon. There is no evidence that the parties to this agreement intended that Rice be responsible for claims that would not be enforceable against either Cannon or Rice. In short, insufficient evidence was produced at trial indicating that Rice expected or intended to satisfy creditors of McCartan and that, therefore, Crooks was a third party beneficiary of the Rice–Cannon contract. The district court should have granted Rice's motion for a directed verdict on this ground.

## 2. Unjust Enrichment Theory

Crooks also argued that it was entitled to payment for the rebar under an unjust enrichment theory. The jury was instructed that:

> Even though there is no agreement between the parties, the law, under certain circumstances, will impose upon parties who have dealt with each other certain obligations as though they were bound by a contract. Thus, if you find from the evidence that, in his dealings with the plaintiff, the defendant received a benefit which unjustly enriches the defendant and which in fairness and good conscience should not be retained by the defendant from the plaintiff, then you will find that the defendant is bound, as though by a contract, to repay to plaintiff the amount of money which defendant unjustly retained.

Following the presentation of evidence, Rice moved for a directed verdict on the unjust enrichment claim. The district court denied Rice's motion.

The unjust enrichment doctrine, also referred to as quasi-contract, contract implied in law, or restitution, allows recovery where the defendant has received a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value of the benefit. *Continental Forest Products, Inc. v. Chandler Supply Co.,* 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974); *Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 744, 710 P.2d 647, 654 (Ct.App.1985). To recover on an unjust enrichment theory, it is not necessary that the parties involved actually intended to form a contract. The contract implied by the law is not a contract at all, but is an obligation imposed by the law to bring about justice and equity, generally without reference to the intent or agreement of the parties. *In re Keeven,* 126 Idaho 290, 882 P.2d 457, 463–64 (Ct.App.1994); *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 942, 854 P.2d 280, 285 (Ct.App.1993). The recipient of the unjust benefit must make restitution to the party conferring the benefit, but only to the extent that, as between the two, the benefit would be unjust for the recipient to retain.

*Continental Forest Products, Inc.,* 95 Idaho at 743, 518 P.2d at 1205; *Idaho Lumber, Inc.,* 109 Idaho at 744, 710 P.2d at 654.

■ At trial, it was Crooks' burden to establish that it had conferred a benefit upon Rice that would be unjust for Rice to retain. In order to successfully do so, Crooks would have had to show that Rice was not entitled to obtain the rebar. Crooks' evidence established only that Rice took possession of the rebar. Indeed, the only evidence offered regarding Rice's entitlement to the rebar showed the opposite, i.e., that Rice had obtained a security interest in the rebar as well as McCartan's other assets to secure Rices $66,000 loan to McCartan. Upon McCartan's default, Rice was entitled to and did take possession of the assets in lieu of foreclosure by agreement with McCartan. If Crooks had offered evidence that Rice took assets in excess of what was owed on the loan, that the loan agreement was a sham, or some other factual circumstance indicating Rice was not entitled to the rebar, the jury may have been able to conclude that Rice was unjustly enriched. In the absence of such evidence, however, merely establishing that Rice took the rebar which McCartan had never paid for could not support a verdict for Crooks on an unjust enrichment theory as to Rice. Again, Crooks' proper cause of action, if any, lies against McCartan. The district court erred in denying Rice's motion for directed verdict in this regard.

Because the jury could have found for Crooks on either of the two theories, and directed verdicts should have been granted as to both theories, the judgment in favor of Crooks must be reversed.

## C. ATTORNEY FEES

■ All three parties involved have requested an award of attorney fees on this appeal. Idaho Code § 12–120(3) authorizes an award of fees to prevailing parties in a civil action based on a commercial transaction. The transaction between Cannon and Rice clearly falls within the definition of commercial transaction found in § 12–120(3). Therefore, Cannon is entitled to an award of costs and attorney fees on this appeal against Rice. With respect to Crooks, we conclude that the nature of the suit, which includes a claim that Crooks was entitled to enforce the Rice–Cannon contract as a third party beneficiary, was sufficiently based on a commercial transaction to warrant an award of fees under § 12–120(3). Therefore, we award costs and attorney fees to Rice against Crooks. The award to Rice, however, is limited to those costs and attorney fees expended by Rice on the issues and claims relating to Crooks and shall not include any costs or fees allocable to Rice's unsuccessful challenge to the Cannon judgment.

## CONCLUSION

The judgment in favor of Cannon Builders, Inc., is affirmed. The judgment in favor of Crooks Industries, Inc., is reversed. Costs and attorney fees on appeal, to be determined under I.A.R. 40 and 41, are awarded as stated above.

WALTERS, C.J., and LANSING, J., concur.