900 P.2d 214

Jack PARROTT and Geraldine Parrott, husband and wife, Plaintiffs–Respondents,

v.

Russel K. WALLACE and Loretta Mae Wallace, husband and wife, and William Trowbridge and Helen Trowbridge, husband and wife, sui juris/in their own right, Defendants–Appellants.

No. 20620.

Court of Appeals of Idaho.

June 23, 1995.

Petition for Review Denied Aug. 25, 1995.

Russel K. Wallace, Twin Falls, pro se appellant argued.

Loretta Mae Wallace, William Trowbridge and Helen Trowbridge, Twin Falls, pro se appellants who participated but did not present oral argument.

Coleman, Ritchie & Robertson, Twin Falls, for respondents. John R. Coleman, argued.

LANSING, Judge.

Russel K. and Loretta Mae Wallace and their lessees, Helen and William Trowbridge, appeal from a judgment of foreclosure entered by the district court in favor of the plaintiffs, Jack and Geraldine Parrott. The Wallaces and Trowbridges contend, *inter alia,* that their requests for a jury trial and a continuance of the trial date were erroneously denied, that the acceleration clause in the mortgage form was unenforceable because certain blanks were not filled in, and that the district court ought not have ordered foreclosure because the default under the mortgage was merely technical and inadvertent. For the reasons stated below, we affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In October 1989, the Parrotts sold to the Wallaces approximately 288 acres of farmland located in Jerome County. A down payment was made, with the balance of the purchase price to be paid in installments as evidenced by a promissory note calling for payment of $93,100 with interest at nine percent per annum. According to terms of the note, the Wallaces were to make annual payments of $9,062.35 from November 1, 1990, through November 1, 1999, at which time the remaining balance and accrued interest would be due. The note was secured by a mortgage which provided that if the taxes or water assessments on the property were not paid, the Parrotts could make the delinquent payments and "consider the whole of said principal sum ... as immediately due and payable."

In 1990, the Wallaces leased the property to Loretta Wallace's mother and stepfather, Helen and William Trowbridge.

In the spring of 1992, the Parrotts discovered that the Wallaces had not paid property taxes for 1990 and 1991 totalling $1,314.67, or a water assessment for 1991 in the amount of $241. Pursuant to the terms of the mortgage, the Parrotts elected to pay these delinquent taxes and assessments, to treat the Wallaces' failure to make the payments as a default under the mortgage, and to foreclose on the property. The Parrotts mailed to the Wallaces a notice of intent to foreclose and filed a foreclosure complaint against the Wallaces and the Trowbridges on May 1, 1992. The defendants denied any default under the mortgage, and the Wallaces filed a counterclaim for damages alleging that the Parrotts had orally misrepresented the boundary lines of the property. A court trial was held on February 8, 1993.

The district court entered a judgment and decree of foreclosure in favor of the Parrotts in the amount of $102,114.18, together with attorney fees and costs of suit. The court found that the Parrotts had not misrepresented the boundary lines of the property and ordered that the Wallaces take nothing by their counterclaim. The judgment also determined that the Parrotts' rights in the property were superior to any interest of the Trowbridges. Motions for a new trial and for relief from the judgment were filed by the defendants and denied by the district court. The defendants now appeal.

After filing their notice of appeal, and before a foreclosure sale was conducted, the

Wallaces petitioned for bankruptcy relief under United States Code, Title 11, Chapter 13, and a temporary stay of this appeal was effected pursuant to 11 U.S.C. § 362. A Chapter 13 bankruptcy plan was ultimately confirmed. By its terms the Wallaces were placed in possession of the farm and were directed to make payments under the same schedule provided by the promissory note. The Chapter 13 plan also contained provisions for the Wallaces to make up past due payments under the note and to pay expenses incurred by the Parrotts in pursuing the foreclosure action.

Following confirmation of the Chapter 13 plan, the stay of this appeal was lifted. The Wallaces and Trowbridges now assert numerous points of error in the proceedings before the district court.

## II.

## ANALYSIS

### A. THE APPEAL IS NOT MOOT

■ As a threshold matter we consider the Parrotts' contention that this appeal has been rendered moot by the bankruptcy court's confirmation of the Wallaces' Chapter 13 plan. The Parrotts argue that the adoption of this plan, allowing the Wallaces to retain ownership and possession of the property and to satisfy their debt by resuming payments on terms set forth in the promissory note, renders moot the issues raised in this appeal from the foreclosure judgment. In our view, the Parrotts' assertion of mootness is incorrect, for it fails to take into account the possibility that the bankruptcy proceeding could yet be dismissed or converted to a Chapter 7 liquidation proceeding.

■ An issue is moot only if it presents no justiciable controversy and a judicial determination will have no practical effect upon the rights of the parties. *See, e.g., Idaho County Property Owners Association, Inc., v. Syringa General Hospital District,* 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991). The confirmed plan here specifically provides that the Parrotts will retain their mortgage lien and that their foreclosure judgment will remain in full force and effect, although any

judicial sale pursuant to the foreclosure judgment is obviously precluded so long as the Chapter 13 plan remains in effect. Until performance of the Chapter 13 plan is completed there remains a possibility that the bankruptcy action will be dismissed or converted to a Chapter 7 proceeding, due to the Wallaces' default in payments under the plan or for other reasons. *See* 11 U.S.C. § 1307. In that event, the Parrotts might once again be entitled to proceed with a foreclosure sale pursuant to their judgment. If the Wallaces prevail in this appeal, the foreclosure judgment could be vacated, while if the Parrotts prevail, there will remain in force a decree of foreclosure that could be effectuated in the event the bankruptcy plan fails. Therefore, the issues raised in this appeal are not moot.

### B. THE DEFENDANTS WERE NOT ENTITLED TO A JURY TRIAL

■ The Wallaces and Trowbridges first argue that the Idaho Constitution, Art. I, § 7, confers the right to a trial by jury in this foreclosure action and that the district court therefore erred in denying their motion for a jury trial. This argument is without merit. The Idaho Constitution's guaranty of the right of trial by jury has no application to suits in equity. *Rudd v. Rudd,* 105 Idaho 112, 115–16, 666 P.2d 639, 642–43 (1983); *Christensen v. Hollingsworth,* 6 Idaho 87, 93, 53 P. 211, 212 (1898). It is well-settled that an action for foreclosure of a mortgage is an equitable proceeding, and neither party is entitled to a jury trial. *Idaho First National Bank v. David Steed and Associates, Inc.,* 121 Idaho 356, 363, 825 P.2d 79, 86 (1992); *Rees v. Gorham,* 30 Idaho 207, 212, 164 P. 88, 89 (1917); *Christensen v. Hollingsworth, supra.* Defenses to foreclosure raised by the mortgagor do not change the nature of the proceeding so as to entitle the mortgagor to a jury trial. *Idaho First National Bank v. David Steed and Associates, Inc.,* 121 Idaho at 363, 825 P.2d at 86; *Idaho First National Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 274, 824 P.2d 841, 849 (1991).

■ To the extent that the Wallaces were entitled to a jury trial on their counterclaim for damages (*see David Steed and Associates, Inc. v. Young,* 115 Idaho 247, 766 P.2d

717 (1988)), they waived that right by failing to make a timely demand for a jury. Idaho Rule of Civil Procedure 38(b) allows a party to request a jury trial of any issue triable by jury by filing and serving demand therefor not later than fourteen days after the service of the last pleading directed to that issue. Failure to make a timely demand under Rule 38(b) constitutes a waiver of the right to a jury trial. I.R.C.P. 38(d); *City of Pocatello v. Anderton,* 106 Idaho 370, 372–73, 679 P.2d 647, 649–50 (1984). The last pleading directed to the misrepresentation issue raised by the Wallaces' counterclaim was the Parrotts' answer to the counterclaim, which was served on June 3, 1992. The Wallaces' motion requesting a jury trial, filed January 8, 1993, was untimely by more than six months. Therefore, the district court did not err in denying the Wallaces' request for a jury trial.

## C. THE DISTRICT COURT DID NOT ERR IN DENYING A MOTION FOR A CONTINUANCE

The defendants also contend that the district court erred in denying their motion for a continuance of the trial after they discharged their attorney. On January 5, 1993, the Wallaces and Trowbridges entered into a stipulation with the Parrotts which stated in pertinent part:

1. That J. Dee May shall be allowed to withdraw as attorney of record for the defendants/counterclaimants. That the defendants/counterclaimants hereby consent to said withdrawal.

2. Defendants/counterclaimants declare to the Court and the plaintiff/counterdefendant [sic] that it is their intent from the date of this Stipulation to represent themselves pro se in the above entitled action and, further, they acknowledge that a trial has been set in this matter at 10:00 o'clock a.m. Wednesday, February 10, 1993. The defendants/counterclaimants *consent to said trial setting* and recognize that there are various pre-trial deadlines as set out in the Notice of Trial Setting and Order Governing Further Proceedings attached hereto as Exhibit "A". (Emphasis added.)

Three days after signing this stipulation, the Wallaces and Trowbridges filed a motion for a continuance of the trial to allow them additional time to prepare their case. The district court denied the motion, stating that in the court's view the stipulation amounted to an agreement that the trial date would not be vacated. The court also concluded that a continuance would be unfair to the Parrotts because the next available trial date would have been in midsummer or early autumn of 1993.

A request for continuance of a trial is committed to the discretion of the trial court, and we review such a decision for an abuse of discretion. *Cannon Builders, Inc., v. Rice,* 126 Idaho 616, 621, 888 P.2d 790, 795 (Ct. App.1995); *State Department of Health and Welfare v. Altman,* 122 Idaho 1004, 1009, 842 P.2d 683, 688 (1992); *Krepcik v. Tippett,* 109 Idaho 696, 699, 710 P.2d 606, 609 (Ct.App. 1985). We find no fault with the district court's decision here. The stipulation and the circumstances under which it was entered indicate the parties' intent that the defendants would not attempt to use the discharge of their attorney as a means to delay the trial. The grounds stated by the defendants in support of their request for additional time were vague at best, showing no compelling need for a continuance, and the district court properly weighed this request against the prejudice the Parrotts would suffer from a delay. The defendants have not demonstrated any abuse of discretion in the denial of a continuance.

## D. ACCELERATION CLAUSE WAS ENFORCEABLE

The Wallaces also argue that the acceleration clause was not a part of the mortgage contract and that the district court therefore erred in enforcing the clause.

The mortgage used by the parties was a pre-printed form obtained from a title company. In the mortgage, the Wallaces are referred to as "the parties of the first part," and the Parrotts are referenced as "the parties of the second part." The mortgage form was filled out by title company personnel, but not all blanks were filled in. Specifically, the paragraph containing the acceleration clause has blanks that were not completed. The

Wallaces contend this omission conclusively establishes that the paragraph was not a part of their contract. The pertinent portion of the paragraph in question is set forth below. For ease of reference in this opinion, we have inserted in the blank spaces letter designations which do not appear in the original.

But in case default shall be made in the payment of said principal sum (a) of money or any part thereof as provided in the said note (b), or if the interest be not paid as therein specified, or if the taxes, water maintenance, or payments of principal or interest on any prior lien or incumbrance be not paid, second part (c) shall have the right to pay the same, and then it shall be optional with the said part (d) of the second part (e), executors, administrators, or assigns to consider the whole of said principal sum (f) expressed in said note (g) as immediately due and payable; and immediately to enter into and upon all singular the above described premises and to sell and dispose of the same [1] according to law and out of the money arising from such sale retain the principal and interest which shall then be due on the said promissory note (h), together with the costs and charges of foreclosure suit, including (i) counsel fees and also the amounts of all such payments of taxes, assessments, encumbrances or insurance as may have been made by the said second part (j), (k) heirs, executors or assigns, with the interest on the same at the rate of (l) per cent per anum rendering the overplus of the purchase money (if any there shall be) unto the said part (m) of the first part, (n) heirs, executors, administrators, or assigns.

The Wallaces assert that the existence of these blanks render the acceleration clause unenforceable. They contend that the only valid acceleration clause is in the note, which allows acceleration upon default in payment of principal or interest but does not provide for acceleration if property taxes or water assessments are not timely paid. We find this argument unpersuasive.

The filling in of these blanks was not necessary in order to give the paragraph meaning or to make it comprehensible. The vast majority of the blanks were merely to allow expressions of nouns and pronouns as singular or plural. That is, blanks (c), (d), (j) and (m) allow reference to "party" or "parties," and blanks (e), (k) and (n) allow insertion of singular or plural pronouns, "his," "her," or "their" as appropriate. Blanks (a), (b), (f), (g) and (h) allow insertion of an "s" to make the preceding words plural if more than one note is being secured by the mortgage. Since it is clear from the remainder of the mortgage that there are two parties of the first part and two parties of the second part and that there is only one promissory note and one principal sum being secured by the mortgage, the blanks for singular and plural designations create no ambiguity and do not deprive the paragraph of meaning. Blank (i) merely allowed the parties, had they chosen to do so, to designate particular costs of foreclosure suit, in addition to counsel fees, which would be recoverable. Blank (l) apparently gave the parties the option to specify a rate of prejudgment interest to accrue on sums paid by the mortgagee for taxes, assessments, encumbrances or insurance. None of these blanks render the paragraph vague or unenforceable.

In support of their position, the Wallaces rely upon *Oliver v. Piner*, 224 N.C. 215, 29 S.E.2d 690 (1944), which held that the parties did not intend to incorporate into a deed of trust a requirement that the mortgagor insure the property for the benefit of the mortgagee where a blank in the deed of trust for the amount of insurance was not filled out. That case is readily distinguishable from the instant case, however, because without specification of an amount of insurance to be procured, no obligation to insure was defined at all. In our case, by contrast, the blanks merely allow expression of singularity and plurality of nouns and pronouns which are already apparent from the remainder of the mortgage or the insertion of optional terms which the parties here did not choose to add.

---

1. The Parrotts' did not "enter into and upon ... the premises and ... sell and dispose of the same" pursuant to this clause, but instead initiated a foreclosure action, and the validity of this provision is not before the Court in this appeal.

In their challenge to the acceleration clause, the Wallaces also assert that, even if the blanks do not make the clause inherently unenforceable, its enforcement by the district court was error because the parties did not intend to incorporate this clause into their contract. This contention is, however, without support in the record. At trial, the Wallaces presented no testimony that they considered the acceleration clause to be omitted because of the existence of blanks, nor did they assert in their closing argument that the acceleration clause was invalid. The scant testimony presented on the subject consisted of Russel Wallace's statement that he did not read the document carefully before he signed it. Consequently, the only evidence bearing upon this issue is the mortgage itself, which the Wallaces signed without striking through the acceleration clause, an act by which they could have clearly expressed any intent to delete the clause to which they now object. The mere existence of the blanks, without other evidence of intent, does not compel an inference that the parties intended to delete a clause that was left intact and not stricken from the document.

## E. NO ABUSE OF DISCRETION IN ORDERING FORECLOSURE

■ The Wallaces next argue that their nonpayment of taxes was merely a "technical default," inadvertent on their part, and that it was therefore inequitable for the district court to order foreclosure.

■ Our Supreme Court has held that, "In a suit of equitable cognizance to foreclose a real estate mortgage the trial court may refuse foreclosure where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagee." *Beal v. Mars Larsen Ranch Corporation, Inc.*, 99 Idaho 662, 666, 586 P.2d 1378, 1382 (1978). The Supreme Court's language in *Beal* notes that the court *may* refuse foreclosure in such circumstances. We therefore deem the determination whether to allow foreclosure for a minor default to be committed to the discretion of the trial court. Accordingly, we must consider whether in the circumstances of the Wallaces' default,

the district court abused its discretion by ordering foreclosure.

The taxes and water assessments that the Wallaces had failed to pay totalled $1,555.67. Although this amount is comparatively small in relation to the principal balance of the note that was accelerated, it cannot be called a trivial sum. Nor was the duration of the Wallaces' default insignificant. By the time the Parrotts learned of the delinquencies and paid the overdue taxes, a portion of the property taxes had been delinquent for more than fifteen months.

In support of their argument that the default was technical and inadvertent, the Wallaces contend they were unaware of the tax and water delinquencies because the Trowbridges, as lessees of the property, had agreed to pay these obligations and had told the Wallaces that the payments were made. However, evidence before the trial court also included the 1991 tax assessment notice admittedly received by the Wallaces, which stated on its face that the 1990 taxes were delinquent. The Wallaces thus had notice of the default.

Taking into consideration the magnitude, duration and circumstances of the default, we conclude that the district court in the exercise of its discretion could properly grant the equitable remedy of foreclosure.

## F. RULE 60(b) MOTION WAS UNTIMELY

■ On October 28, 1993, the Wallaces filed a motion for relief from the judgment pursuant to I.R.C.P. 60(b) based upon newly discovered evidence. The district court denied the motion, and the Wallaces contend that this denial was error.

■ I.R.C.P. 60(b) requires that a motion for a new trial based upon newly discovered evidence shall be filed within a reasonable time, but "not more than six (6) months after the judgment, order, or proceeding was entered or taken." This time limit is mandatory. "The district court is only vested with discretion to set aside a . . . judgment if the moving party has complied with the guidelines and the time for taking any such action pursuant to I.R.C.P. 60(b) may not be ex-

tended by either the parties or the court." *Catledge v. Transport Tire Co. Inc.*, 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984). The judgment in this case was entered on March 22, 1993, and the motion for a new trial was filed more than seven months later. The motion therefore was untimely and was properly denied.

## G. JUDGMENT AMOUNT

██ Lastly, the Wallaces object to the amount of the judgment and the award of attorney fees entered by the district court. They present no explanation, however, as to how the court erred in calculating the amount of the judgment other than to state that "these sums are not specified in the contract," nor do they offer any argument stating why the attorney fee award was incorrect. We will not address on appeal assignments of error that are unsupported by argument or authority. *Murray v. Farmers Insurance Co.*, 118 Idaho 224, 796 P.2d 101 (1990); *Berning v. Drumwright*, 122 Idaho 203, 832 P.2d 1138 (Ct.App.1992).

## H. ATTORNEY FEES ON APPEAL

██ The Parrotts seek attorney fees on appeal. The promissory note provides that attorney fees will be recoverable if an action is instituted on the note. Accordingly, attorney fees on appeal are awarded to the Parrotts pursuant to this provision of the note and I.A.R. 41.

### III.

### CONCLUSION

The judgment and decree of foreclosure and the district court's order denying the Wallaces' motion for relief from the judgment are affirmed. Costs and attorney fees to respondents.

WALTERS, C.J., and PERRY, J., concur.